CONTINENTAL LUMBER COMPANY, APPELLEE, v. MUNSHAW & COMPANY, APPELLANT.

FILED NOVEMBER 10, 1906. No. 14,471.

1. **Directing Verdict.** Where there is competent testimony tending to support a defense properly pleaded, it is error for the trial court to direct a verdict for the plaintiff.

2. **Question for Jury.** When the intention of a party is to be ascertained from disputed or ambiguous circumstances, the necessary inferences to be drawn are for the determination of the jury. *Langan v. Whalen,* 67 Neb. 299, followed and approved.

APPEAL from the district court for Douglas county: WILLIAM A. REDICK, JUDGE. *Reversed.*

A. H. *Murdock,* for appellant.

E. R. *Leigh, contra.*

OLDHAM, C.

This action was originally instituted in the county court of Douglas county by the plaintiff, Continental Lumber Company, against the defendant, Munshaw & Company, to recover the remainder alleged to be due on a car-load of lumber, shipped F. O. B. to defendant at South Omaha,

Nebraska. Defendant answered, admitting that it had ordered a car-load of No. 2 shiplap lumber from plaintiff at the price per thousand feet alleged in plaintiff's petition; that, when the lumber was received and inspected, about half the load was under grade and in a damaged condition; and that for this reason defendant refused to receive the lumber, and so notified plaintiff, and still held the lumber subject to plaintiff's order. Each and every other allegation in plaintiff's petition was denied, and defendant asked judgment on a counterclaim for the amount of freight paid before the lumber was inspected. Plaintiff replied with a general denial, and alleged that, defendant having filed a claim for damages for the inferior condition of the lumber shipped, it was by that act estopped from a rescission of the contract of purchase. At the trial in the county court defendant had judgment, but on an appeal to the district court, where the same issues were tendered, the court, after the testimony was all in, directed a verdict for the plaintiff, and entered judgment on the verdict. To reverse this judgment defendant has appealed to this court.

As a verdict was directed for plaintiff, our attention must be directed to the answer filed and the evidence offered by the defendant in support thereof; and, as the answer on its face shows a sufficient reason for the rescission of the contract, we will pass to a consideration of the testimony offered. The plaintiff alleged that the order was made subject to the rules of inspection of the Southern Lumber Manufacturers' Association, and that these rules were in general use, and known to and acquiesced in by all retail lumber dealers. Defendant denied this allegation, however, and offered evidence tending to show that the lumber was ordered by Mr. Munshaw, a member of the defendant firm, from one of plaintiff's traveling salesmen, with the agreement that the lumber was to be up to the grade of that of other associations; that he (Munshaw) refused to sign any written order for the lumber, which might contain conditions that he did not understand; that

under this arrangement he ordered two car-loads of boards and one carload of No. 2 shiplap; that the two car-loads of boards arrived first, and were unloaded and found to be according to the representations, and that defendant accepted the same; that, when the third car arrived, and after defendant's foreman had paid the freight, which was required by a rule of the railroad company at South Omaha before an inspection was permitted, the lumber was unloaded, and, on an inspection, over half of it was found to be of a very inferior quality and below the grade of No. 2 shiplap. The evidence of lumber dealers in Omaha was also introduced in support of defendant's claim that the lumber was under grade. When the lumber was received, after its inspection, defendant sent the following communication to plaintiff: "South Omaha, Neb., Dec. 17, 1903. Continental Lumber Co., Houston, Tex. Gentlemen: We have just unloaded car No. 2,210 M., K. & T. and find 592 pcs. 8″ 14′ shiplap, and 589 pcs. 8″ 12′ shiplap in very bad condition, so badly blued they are almost rotten. Will have to charge you back $3 per M on above number of pieces or 10,237 ft. and make a claim of $30.71. Kindly send us credit memorandum for same. We have piled this stuff up separate, and would be glad to show it to anyone you might send to see it. Very respectfully, Ed Munshaw & Co."

In response to this letter plaintiff, on December 19, 1903, wrote to the defendant the following: "Your favor of the 17th, and we are surprised that you would make such a modest claim on a single car of lumber, as you desire to make against car M., K. & T., 2,210. We are not agreeable to the claim you file and you will therefore hold the entire shipment intact—subject to our order, unless you are prepared to pay for the same as invoiced. We will send an official inspector right up to Omaha, Neb., to investigate the matter." Mr. Munshaw testifies that on the receipt of this letter defendant piled all the lumber received in the car in dispute in separate piles in its yard, and still holds it there subject to plaintiff's

order. On December 22, 1903, defendant wrote to plaintiff, as follows: "Yours of the 19th at hand. We are not surprised in the least that you are not agreeable to the claim that we made on car No. 2,210 M., K. & T., as there certainly must be something very wrong in a concern shipping stuff of this kind, if they knew the condition in which it was in. We have the stuff piled up in our yard, and will welcome an official inspector to investigate the matter."

In reply to this communication plaintiff wrote, under the date of December 24, as follows: "Yours of the 22d relative to M., K. & T. car 2,210, and have forwarded both copy of complaint and invoice to Mr. Geo. K. Smith, Sect'y, S. L. M. A., with request to have official inspector call on you at once and inspect this shipment. We understand from your letter that you are agreeable to making settlement on the result of this inspection."

On January 6, 1904, defendant answered this letter, saying: "Your official inspector has not as yet shown up to investigate contents of car No. 2,210 M., K. & T. Kindly attend to this matter at your earliest convenience, and oblige." Shortly after this communication an inspector, named Warren, arrived in South Omaha, and examined the lumber and made an official report, in which he found 862 feet of same below grade, and that defendant was entitled to a reduction of $1.73 on the purchase price of the lumber. On receipt of the report of the inspector, plaintiff, under the date of January 16, wrote to defendant informing it of the inspector's report, notifying it that it had been allowed the discount awarded, and that under the rules of the association the cost of the inspection had been $18.45, of which defendant was entitled to pay $16.90, and that plaintiff would pay the remainder. The letter requested a remittance of the remainder due under the inspector's report. In answer to this communication defendant, on January 21, 1904, sent the following letter to plaintiff: "We are in receipt of yours of the 16th inst., answering, we beg to advise you that the contents of car

2,210 M., K. & T. is piled in our yard, subject to your disposition. We absolutely refuse to accept this car, only on conditions named in ours of Dec. 17th." From this correspondence the learned trial judge appears to have held that the defendant, with full knowledge of all its rights and remedies, elected to affirm the contract and abide by a settlement under the rules of the association, and that, having so elected, it is bound by its election.

The printed rules of the association were admitted in evidence, and contained, among other things, the requirements for the inspection of different grades of lumber. But there is no printed rule which binds the seller and purchaser to abide by an official inspection when one is made. Mr. Warren testified that, so far as he knew, settlements were generally made according to the report of the official inspector, but this is as far as his testimony goes. He also testified that, when he began the inspection, Mr. Munshaw, acting for the defendant, objected to the inspection, and told him that he would not be bound by it, and that unless the company would accept the proposition contained in the letter of December 17, 1903, he would not accept the lumber. Now, the question arises whether or not this correspondence and all other facts and circumstances connected with the transaction clearly and conclusively show that defendant, with full knowledge of the rules of the Southern Lumber Manufacturers' Association, intended to abide by the official inspection of the lumber under such rules.

One reasonable interpretation of this correspondence between plaintiff and defendant might be that, on the receipt of the lumber, defendant objected to the quality and offered to take it, not at the schedule price, but at a considerable discount; that, when the plaintiff received this notice, it directed defendant to hold the entire car-load subject to plaintiff's order, and also informed the defendant that an inspector would be sent to investigate the condition of the lumber. It might be contended that the correspondence up to this point shows that plaintiff had

Continental Lumber Co. v. Munshaw & Co.

elected to rescind the contract of sale rather than pay the damages claimed by the defendant, and that the next letter from defendant showed that it was willing that plaintiff should send an inspector to verify its statement as to the condition of the lumber, but that this letter contained no agreement on the part of defendant to abide by the decision of the inspector. The reply to this letter by the plaintiff shows that plaintiff expected defendant to abide by an official inspection; but, when the inspector came, it is in evidence that defendant notified him that it would not be bound by the inspection, and that, when the inspection was made, defendant utterly repudiated it and rescinded the contract unless plaintiff would settle according to defendant's first offer. We do not intend to be understood as holding that there is no evidence in the record tending to support plaintiff's claim. What we do say is that there is competent evidence in the record to support defendant's theory of the case, and that in this state of the record the question of the intention of the parties at the time the inspection was agreed upon was a question of fact that should have been submitted to the jury under proper instructions. In *Langan v. Whalen*, 67 Neb. 299, the rule is laid down that, "when the intention of a party is to be ascertained from disputed or ambiguous circumstances, the necessary inferences to be drawn are for the determination of the jury." Applying this rule to the facts and circumstances surrounding the transaction herein, we think that the learned trial judge erred in declaring, as a matter of law, that defendant, with full knowledge of all its rights, had elected to abide by its contract of purchase and submit its dispute as to damages to the final determination of an official inspector of the Southern Lumber Manufacturers' Association. We therefore recommend that the judgment of the district court be reversed and the cause remanded for further proceedings.

AMES and EPPERSON, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.