## Commonwealth v. Wiggins.

(Decided May 27, 1915.)

### Appeal from Livingston Circuit Court.

1. Criminal Law—Fraudulent Sale of Mortgaged Property.—In a prosecution under Section 1358 of the Kentucky Statutes for fraudulently selling mortgaged personal property with the intent to prevent the enforcement of the lien thereon, the intent and purpose to defraud the mortgagee or the public constitutes the offense, which must be gathered from the attendant facts and circumstances.

2. Criminal Law—Fraudulent Sale of Mortgaged Property.—In a prosecution under Section 1358 of the Kentucky Statutes for fraudulently selling mortgaged personal property with the intent to prevent the enforcement of the lien thereon, the question of the defendant's intent is one of fact to be determined by the jury.

JAMES GARNETT, Attorney General, and JOHN L. GRAYOT, Commonwealth's Attorney, for appellant.

Opinion of the Court by Chief Justice Miller—
Certifying the law.

The appellee, J. H. Wiggins, was indicted for fraudulently selling and disposing of his horse "Don" on which D. D. Doctorman held a recorded mortgage to secure a debt of $100.00.

The indictment charged that Wiggins sold and disposed of the horse with the intent to prevent the enforcement of the lien thereon, and the sale of the property to pay the debt.

The indictment was found under section 1358 of the Kentucky Statutes, which reads as follows:

"If any person shall fraudulently sell, conceal or dispose of any personal property on which there is at the time a mortgage of record, with intent to prevent the enforcement of the lien thereon, or the foreclosure of the mortgage and sale of the property, he shall be fined not less than ten nor more than one thousand dollars, or imprisoned not less than fifteen nor more than ninety days, or both so fined and imprisoned."

At the close of the testimony the trial judge directed the jury to find the defendant not guilty; and from a verdict and judgment entered accordingly, the Commonwealth prosecutes this appeal.

Upon the trial, the Commonwealth first proved the recording of the mortgage upon the horse from Wiggins to Doctorman, by the county court clerk. The only other proof for the Commonwealth was given by the prosecuting witness R. F. Blakely, who testified, in substance, as follows:

"Some time during August, 1914, the defendant J. H. Wiggins came to my house and offered to trade horses with me. We traded, and he traded me a bay horse a little over five years old named 'Don' for another horse I owned. This horse he traded me was the same horse he had mortgaged to D. D. Doctorman in October, 1913. After we had traded and had changed saddles and bridles and he was starting to ride away, I asked Wiggins if there was anything against the horse 'Don' he had traded me, and he said the horse was mortgaged to D. D. Doctorman, but that he, Wiggins, would see the agent of Doctorman, one Ramage, and have him change the mortgage. Doctorman was out of the State at that time and Ramage was his agent. Wiggins went away and has never had the mortgage changed, or paid Doctorman or me; and, in a few days after his trade was made, he sold

or gave a mortgage to his brother on the horse I traded him. The trade he made with me when he traded me the horse 'Don' occurred in August, 1914, and in Livingston County, Ky. D. D. Doctorman is now in Arkansas. After the trade defendant showed me a letter received from Doctorman.''

Wiggins testified in his own behalf, as follows:

"I live in Livingston County, Kentucky. I know D. D. Doctorman and R. F. Blakely.

"On the 23d day of October, 1913, I mortgaged a bay horse five years old named 'Don' to D. D. Doctorman, and in August, 1914, I traded that same bay horse, called 'Don' to R. F. Blakely for another horse. I did not tell Mr. Blakely that any one had a mortgage on the horse until after we had traded, and I had his horse and he had the horse called 'Don.' We had changed saddles and bridles, and then Mr. Blakely asked me if there was anything against the horse I had traded him and I told him D. D. Doctorman had a mortgage on him but that I would see Mr. Ramage (agent for Mr. D. D. Doctorman) and have him change the mortgage to the horse I had gotten from Blakely.

"I did try to have them change the mortgage but they would not agree to it. Right after I traded Mr. Blakely the horse 'Don' on which D. D. Doctorman had a mortgage I gave my brother a mortgage on the horse I got from Blakely, the same horse I told him I would have the mortgage Doctorman held changed to.

"I have never paid D. D. Doctorman any part of what I owe him, and have not paid Mr. Blakely, and have not offered to trade or deliver back to Mr. Blakely the horse I got from him for the horse 'Don.' ''

The foregoing comprised all the proof.

It is the intent and purpose to defraud the mortgagee or the public that constitutes the offense under the statute, and this intent must be gathered from the attendant facts and circumstances. Galbreath v. Wilson, 10 Ky. Law Rep., 638; 2 Roberson's Criminal Law, Sec. 757.

If the intent to defraud is there, the statute has been violated.

So, the guilt of Wiggins is to be determined by the fact whether he intended to defraud Doctorman in selling the horse which he had mortgaged to Doctorman. The trial court seems to have treated that question as one of law; or, that the charge had been clearly disproved by the evidence in this case.

We cannot agree with either view. In the first place, the question of intent was one of fact to be determined like other questions of fact.

In 38 Cyc., 1525, it is said:

"An issue, involving the determination of the mental attitude or intent of a person or persons with respect to acts done by them, is for the jury, even though the evidence be not conflicting. A question of intent is always a question of fact. The rule that a man is taken to have intended the probable result of his own acts is at most a rule of evidence to be applied by the triers in inquiring into the intent, but is never a rule of law."

See also Cox v. Knight, 49 Ala., 173; Quinebaug Bank v. Brewster, 30 Conn., 559; Murphy v. Murphy, 95 Iowa, 271; Burham v. Toothaker, 19 Me., 371; Hough v. Comstock, 97 Mich., 11; Riordan v. Doty, 56 S. C., 111; Carson v. Milwaukee Produce Co., 133 Wisc., 85; Continental Lumber Co. v. Munshaw, 77 Neb., 456.

The proof shows beyond question that Wiggins sold the horse while it was mortgaged to Doctorman, and without Doctorman's knowledge or consent.

Under this state of facts, it is clear from the authorities above quoted that the question of Wiggins' guilt should have been submitted to the jury; and that the trial court erred in giving the peremptory instruction to find the defendant not guilty.

This opinion is certified as the law of the case. Criminal Code, Sec. 352.