## Quillen v. Commonwealth.

(Decided Oct. 28, 1938.)

HANNAH, VAN SANT & McKENZIE for appellant.

HUBERT MEREDITH, Attorney General, and J. M. CAMPBELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Reversing.

The appellant, C. R. (Tip) Quillen, was convicted of a felony, under Section 1358, Kentucky Statutes, for fraudulently concealing personal property on which there was a mortgage of record with intent to prevent or hinder the enforcement of the lien thereon and prosecutes this appeal from the judgment of conviction.

As the principal ground for reversal of the judgment urged by the appellant is that the court erred in refusing to grant a peremptory instruction, it will be necessary to state the evidence for the commonwealth somewhat in detail.

This evidence shows that the appellant purchased a truck from the Hannah Chevrolet Company of Greenup, Kentucky, at the price of $1,042.64, a part of which was paid in cash and a conditional sales contract dated March 26, 1935, was executed between the parties for the balance of $731.64, payable in monthly installments. This conditional sales agreement was lodged for record in the office of the clerk of the Boyd County Court on March 28, 1935, and duly recorded. This sales contract was transferred to the General Motors Acceptance Corporation, but as appellant did not fulfill the terms thereof, the Hannah Chevrolet Company, being guarantors of the agreement, were compelled to take it over again from the General Motors Acceptance Corporation.

Being, in such manner, the holder of appellant's obligations for the deferred payments, the Hannah Chevrolet Company, on March 3, 1936, instituted an action in the Boyd circuit court against the appellant seeking a foreclosure of its lien on the truck. An attachment was issued in this action and on the next day levied on the truck by the sheriff of Boyd county, whereupon the appellant executed a forthcoming bond, under Section 214 of the Civil Code of Practice with John C. Tipton as surety. The truck was thereupon restored to appellant's possession by the sheriff and he continued in the

possession of it and continued to use it in his business until the month of September, 1936, at which time it was involved in a wreck and was badly damaged.

The evidence for the commonwealth shows that the damage to this truck was of the following nature, namely, that the radiator was badly mashed and crushed back over the engine; the hood of the truck mashed and pushed back through the windshield; that the windshield and cab were very considerably smashed and the cab pushed back against the bed of the truck and that the bed of the truck, which was a stake-rack, was also badly damaged. The truck in this condition was pulled in appellant's garage at Ashland, where it apparently remained until appellant was tried and convicted in this case.

On March 6, 1937, judgment was rendered in the Boyd circuit court in the action of Hannah Chevrolet Company against appellant and pursuant to this judgment the truck was sold by the sheriff on April 5, 1937, at which sale appellant became the purchaser for the sum of $530, the amount of the Hannah Chevrolet Company's debt, interest and costs, with J. C. Tipton, who was also the surety on the forthcoming bond, as surety on this sale bond. Appellant having failed to pay the sale bond, Tipton was compelled to and did pay same himself on August 10, 1937.

When the truck was produced at the sheriff's sale by appellant, it was pulled to the place of sale by another truck and none of the damaged parts above mentioned, namely, the radiator, hood, windshield, cab and stake-rack, were on the truck. In addition thereto, it appears that two of the dual wheels which were on the truck when purchased by appellant were also absent from the truck at the time of the sale.

The commonwealth's evidence further showed that this truck was greatly damaged in the collision and that the appellant sought to repair same and removed these damaged parts from the truck for this purpose and that he also attempted to get salvage bids on these damaged parts, and it further appears that these damaged parts which were removed from the truck were at appellant's garage in Ashland on the day of appellant's trial on the charge here involved; in fact the appellant admitted this and in his testimony invited the jury to his garage

to inspect these parts. Apparently the invitation was not accepted.

For the purpose of evidencing a fraudulent concealment of these parts, J. C. Tipton, the surety who was compelled to pay the purchase money bond, in answer to the question whether or not appellant offered any explanation as to why he did not bring all of the truck, stated that appellant said, "it was burned up in a fire," and that at another place in his testimony, this witness, when asked if appellant at the time of the sale said anything to him about having these parts down at his garage, stated that the appellant said, "that is all; that is all there is to it."

The only evidence introduced by the commonwealth having any bearing whatever on the value of the property which appellant was charged with concealing, was that witnesses stated that the truck as it appeared at the sale was worth approximately $35 to $50, but that if it had had all parts on it, it would have been worth $500. No witness who testified to these facts had seen the damaged parts after the wreck.

The witness, J. C. Tipton, assigns as a reason for signing the sale bond as surety, that Mr. Hannah had him "hooked" on the forthcoming bond. This witness received $10 for signing the bond.

The defendant assigns as a reason for his failure to have the missing parts of the truck on it at the time of the sale, that he spoke to a deputy sheriff about it and that this deputy informed him it would not be necessary to put the parts on the truck and that it would be sufficient just to bring the chassis to the sale, but this is flatly denied by this deputy sheriff.

Appellant contends most earnestly that he was entitled to a directed verdict because of the execution of the forthcoming bond and his subsequent purchase of the truck and payment in full of the mortgage debt and, at first blush, this contention seems rather plausible.

The substance and effect of the argument along this line is that it negatives conclusively and as a matter of law the existence of any intention upon the part of appellant to prevent the enforcement of the mortgage lien. We agree with this contention only so far as to say that it is very persuasive evidence indicating a lack of such intention.

However, we must not overlook the fact that it was still possible, we will not say probable, that appellant would conceal these missing parts of the truck with the intent to prevent the enforcement of the lien even after the execution of this bond, for it is possible that he might have had in mind that, having procured Tipton to sign the forthcoming bond, he would conceal these parts so that the lien could not be enforced thereon and then leave Tipton in the position in which he would have to compensate the lien-holder for these missing parts if the truck sold for less than the lien debt. And, even though the appellant, himself, thereafter became the purchaser for the full amount of the lien debt, this does not, as a matter of law, establish that he had no intention of preventing the enforcement of the lien by concealing them.

It is true that a concealment of property to be a violation of this statute must have been done fraudulently and with the intent to prevent the enforcement of the lien, but it does not necessarily follow that the mortgage-holder is the only one who could be defrauded or injured by such an act.

This court in the case of Commonwealth v. Wiggins, 165 Ky. 73, 176 S. W. 946, announces the rule that [page 947]: "A question of intent is always a question of fact."

We are unwilling to say that the execution of this bond and the subsequent purchase of the truck by appellant for the amount of the lien conclusively negatives such intent.

We are also of the opinion that there was sufficient evidence, although it was slight, to justify its submission to the jury on the question of such intent, for the witness, Tipton, stated that at the time of the sale, the appellant told him that the missing parts were gone and that the truck had been in a fire, especially when in addition to this the evidence of the deputy sheriff justifies the inference that appellant gave a false reason for not having these parts at the sale.

For these reasons, the trial court committed no error in submitting the question of fact to the jury.

Appellant insists that the court was in error in requiring him to answer certain questions concerning his conviction of a felony. This complaint is based on the

following questions and answers elicited from the defendant while testifying as a witness, to which exception was duly taken:

"Q. Have you heretofore been convicted of a felony? A. I think so.

"Q. You know? A. I really don't know what the charge was, but it was conspiracy, I think.

"Q. Wasn't it conspiracy? You know what the charge was and wasn't it conspiracy? A. That is what it was.

"Q. For the sale or theft of automobiles? For the theft or sale of illegal automobiles? In other words, it had to do with the alleged crooked practice of handling automobiles? A. Yes, sir."

We are not seriously impressed by this contention on his part, for we think it competent for the commonwealth to show, for the purpose of affecting his credibility as a witness, not only that he had been convicted of a felony but also to show the nature of this felony, which was all that was accomplished by the above quoted testimony. This seems eminently reasonable, for we well know that certain types of felony convictions might weigh very heavily with the jury in determining the credibility to be given a defendant and that certain other types of felony convictions might carry very little weight. For instance, felony convictions involving matters of dishonesty and immorality would naturally be more convincing of defendant's lack of credibility than convictions involving merely crimes of violence.

In any event, in the case of Bates v. Commonwealth, 260 Ky. 551, 86 S. W. (2d) 322, this matter is practically disposed of by the court, which said [page 323]:

"By provision of section 597 of our Civil Code of Practice it is among other ways provided a witness may be impeached in the following way:

" 'It may be shown by the examination of a witness, or record of a judgment, that he has been convicted of felony.'

"Thus, the commonwealth could have produced the record of the judgment convicting Bates and

read that to the jury, which would have shown not only that Bates had been convicted of a felony, but that the particular felony was murder, and that punishment was fixed at two years in the penitentiary. Since the commonwealth may show that by a copy of the judgment, there is no reason it may not show it by the accused.''

It might be mentioned, in passing, that the court properly admonished the jury as to the purpose for which this evidence of previous conviction of felonies was admitted.

Appellant further urges in his brief that the conditional sales contract or mortgage had been released, but we find nothing substantiating this except the writing appearing in the record of Hannah Chevrolet Company against appellant in the Boyd circuit court, concerning which there is no other proof, and no release of record appears.

We see no merit in appellant's contention that the conditional sales contract was not a recordable instrument because of a defect in the acknowledgment. This acknowledgment was before a deputy county clerk of Greenup County and apparently in conformity with Section 501 of the Statutes, and it was actually recorded.

In view of the statement above, as to the evidence concerning value, it is apparent that the court erred in submitting this case to the jury on a felony instruction.

The only evidence as to value appears in the testimony of two witnesses in the following manner:

"Q. At the time of the sale of the car to him and the execution of this mortgage did the automobile contain or consist of these extra wheels you have mentioned and of the body and of the cab? A. Yes sir.

"Q. And considering the condition of the car at the time he produced the chassis and wheels as you have just stated, what would have been the value of the truck if it had contained the parts which you say were removed? .A. The truck would have been a year old. Its value I would think would have been in the neighborhood of $500.00.''

Exception was taken to this testimony.

Appellant was charged with, and the evidence directed to, concealing certain parts of the truck and the proper method of proving value under this statute was to prove the value of the parts so concealed. The instruction correctly submitted this issue to the jury, but there was no competent evidence on which to base it. Neither of the witnesses who testified in the manner indicated had seen these parts of the truck since the wreck. The commonwealth's evidence showed that these parts were practically junk.

Certainly, it was not competent for witnesses who had no idea as to the extent of the damage to the truck or to these parts, to testify as to the value of the truck and what it would have been worth if the missing parts had been on it.

Obviously, this is all the more true when it is apparent that in fixing what the value of the truck would have been at the time of sale with the missing parts on it, the witnesses did not take into consideration the fact that the truck and these parts had been badly damaged by this wreck.

For this reason, the judgment is reversed with directions to grant the defendant a new trial and for further proceedings consistent with this opinion.