## LUCAS v. COMMONWEALTH.

Court of Appeals of Kentucky.
Feb. 27, 1953.

S. H. Monarch, Hardinsburg, for appellant.

J. D. Buckman, Jr., Atty. Gen., and John B. Browning, Asst. Atty. Gen., for appellee.

STEWART, Justice.

Appellant, Vester Lucas, was convicted of the crime of fraudulently selling, concealing or disposing of personal property upon which there was a mortgage of record. See KRS 434.210. His punishment was fixed at one year's imprisonment in the penitentiary. The sole ground urged for reversal is that the evidence was insufficient to support his conviction.

It is not in dispute that Lucas executed a chattel mortgage on February 8, 1950, to Hugo Marx to secure a note of the same date for $1,175.50, representing the purchase price of 8 steers. The mortgage was promptly recorded in the proper office in Breckinridge County, where Lucas lives, and it has not been released of record or settled.

David Sharpe testified he lived near Lucas' farm and that he frequently saw the cattle grazing in the latter's fields prior to the middle of August, 1950. Thereafter he did not see them again, but he had no knowledge as to what happened to them. Sharpe stated that Lucas offered to trade him one of the mortgaged cattle for a heifer. The trade did not materialize because Sharpe was interested only in acquiring a bull.

Robert O. Trent, the attorney for Hugo Marx, testified that in the late autumn of 1950, after the cattle had disappeared, Lucas sold his farm to one Jess Howard for $4,500. He received therefor cash and a note for $2,000, the note being secured by a vendor's lien retained in the deed to Howard. Lucas immediately bought another farm from his brother, Herbert, for $2,600, but he had the deed of conveyance made solely to his wife, and he paid for the new place in part by indorsing over to his brother the $2,000 Howard note. Trent further stated that he demanded payment of the note given by Lucas to Marx for the cattle but that he had been unable to collect any part of the debt.

Lucas testified that, after he obtained the cattle, he brought them to his home at Constantine in Breckinridge County and at the close of winter he turned them out to pasture on his farm. He said they ran on the pasture from the time the grass came out in the spring until about the third week in August, 1950, at which time they were either stolen or they strayed away. The day after they were missing he said he and his son, Charles, searched for them for several days, visiting all the neighboring farms and making inquiries about the cattle, still they could obtain no clue as to their whereabouts. Then he made trips to Bowling Green, to Leitchfield and to Munfordville where he looked for the cattle at the stockyards in each city and where he left descriptions of the cattle so that persons at each place could watch out for them. He said that on Monday after he had missed the cattle on the previous

Thursday he went to Hardinsburg, and there he called Marx on the telephone and notified him the cattle were gone and that he thought they had been stolen. When asked during the trial if he reported the theft of the cattle to the sheriff while he was in Hardinsburg on that day his reply was "I forgot about it," and he added he did not return later for that purpose because he did not think there "was any use in doing so." Lucas testified, as did his wife, that he offered to give Marx a new mortgage on the wife's farm to secure the debt owing for the steers.

Lucas' son, Charles, and his brother, Herbert, corroborated the testimony of Lucas' as to the extended search Lucas said he had made for the cattle. Roy Butler, a neighbor, testified that Lucas and his son came to his house on the third day after the cattle were reported missing and they told him the cattle were gone and asked him to maintain a lookout for them. Finally, two witnesses testified that Lucas' reputation for general morality was good in the community where he lived.

■ Lucas earnestly maintains the evidence does not do more than cast a suspicion on him of having committed the crime of which he is accused. We cannot accept this contention. In a case of this character, it is the intent to defraud the mortgagee that constitutes the offense, and such intent must be gathered from the attendant facts and circumstances. Whether or not such intent exists is one of fact that must necessarily be determined by the jury. See Riley v. Commonwealth, 275 Ky. 370, 121 S.W.2d 921; Quillen v. Commonwealth, 275 Ky. 158, 120 S.W.2d 1047; and Commonwealth v. Wiggins, 165 Ky. 73, 176 S.W. 946.

■ The proof shows that Lucas was in possession of mortgaged property which disappeared under mysterious circumstances. He relied for his defense upon the theory that the cattle were stolen and yet he admits he made no report of the theft to the sheriff, the officer whose lawful duty it is to investigate such cases. Prior to the disappearance of the cattle it is uncontradicted that he attempted to trade one of the mortgaged steers to a neighbor. Shortly after the cattle vanished he sold his farm but he immediately purchased another and had it deeded to his wife. The evidence we have discussed was such that the jury might reasonably infer an intent on the part of Lucas to defraud his mortgagee.

Wherefore, the judgment is affirmed.