## DAVIS v. GOVERNMENT OF CANAL ZONE.

(Circuit Court of Appeals, Fifth Circuit.  May 1, 1924.)

No. 4302.

**1. Larceny ⊂⊃13—Subsequent ratification of taking by owner not a defense.**

Ratification or acquiescence in the taking by the owner of stolen property after the offense is complete does not destroy the criminality of the act, nor prevent its prosecution as an offense against the public.

**2. Larceny ⊂⊃26—Restitution of stolen property does not prevent prosecution.**

Restitution of stolen property does not absolve the offender from prosecution, nor operate in mitigation of the penalty incurred.

In Error to the District Court of the United States for the Canal Zone, at Ancon; John D. Wallingford, Judge.

Criminal prosecution by the Government of the Canal Zone against George Davis.  Judgment of conviction, and defendant brings error. Affirmed.

Henry P. Dart, Jr., of New Orleans, La., and J. O. Carr, of Wilmington, N. C. (C. P. Fairman, of Cristobal, Canal Zone, J. O. Carr, of Wilmington, N. C., and Henry P. Dart, Jr., of New Orleans, La., on the brief), for plaintiff in error.

Guy H. Martin, U. S. Atty., of Ancon, Canal Zone, for defendant in error.

Before WALKER and BRYAN, Circuit Judges, and GRUBB, District Judge.

WALKER, Circuit Judge.  The plaintiff in error, George Davis, was convicted under an information which charged that, at a time and place stated, he "did willfully, unlawfully, and feloniously, without the consent of the owner thereof, steal, take, and carry away one" described Liberty Loan Bond, "of the value of $100, then and there the property of one Arthur H. Regan."  Evidence adduced was to the following effect:

Prior to June 1, 1923, Regan bought four Liberty Loan Bonds, three $100 bonds and one $50 bond, which he kept in a hand bag in a closet of his room in a bachelors' quarters building in the Canal Zone.  He cut coupons from those bonds about June 1, 1923.  Thereafter he did not look into the bag for the bonds until July 9th or 10th, when he discovered that two of the bonds were missing, the $50 bond, and the $100 bond described in the information.  He did not give Davis or any one permission to take those bonds, or any of them, from his hand bag. Upon discovery that the two bonds were missing, he reported the theft to the police.  A Canal Zone policeman, after discovering that the missing $50 bond had been sold by Davis to a bank in Panama City, and that the missing $100 bond had been sold by him to another bank in the same place, arrested Davis.  When asked by the policeman where he got the bonds he sold to the two banks, Davis said that they belonged to him; that he bought them during the Liberty Loan drives.  Upon the policeman telling him that the two bonds sold to the banks were bought

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

by Regan from a person named, Davis said that he took those bonds out of Regan's hand bag, the $50 bond on June 18th and the $100 bond on July 9th. Upon the policeman asking him why he took the bonds, Davis said he had been drinking, and was in debt, and needed money. He was off those two days, June 18th and July 9th. He had a key he knew would unlock Regan's hand bag, as he had previously loaned this key to Regan; he went into the hand bag, thinking he could find some money, and he found the bonds there.

Davis was an employee of the Panama Railroad Company, and when the bonds were taken, and before and after that time, occupied a room on the same floor on which was the room occupied by Regan, the rooms occupied by Davis and Regan and rooms occupied by others all opening on a common porch on one side. The occupants of rooms opening on that porch had access to all of those rooms, which were open at all times. Regan had a telephone in his room, which was at the disposal of everybody on that floor. The occupants of the rooms opening on the porch mentioned had a mess among themselves, and would occasionally have meals there, instead of going to a restaurant. When the bonds were taken, and before and after that time, Davis and Regan were friends. The bonds were never mentioned in any talk between Davis and Regan before the arrest of Davis.

Davis was a witness in his own behalf. In the course of his testimony he stated as follows: At the times he took the bonds he knew that there was a telephone in the office in which Regan worked. He did not call up Regan to ask him for money or a bond. Between June 18th, when he took the $50 bond, and July 9th, when he took the $100 bond, he was with Regan frequently, talked with him, played cards with him, and drank with him, but did not tell him of taking the $50 bond. He sold both of the bonds absolutely. He drew $134 pay early in July. Prior to his arrest he did not try to buy back the $50 bond, and did not tell Regan that he had taken his bonds.

[1] The court rejected offered testimony to the effect that, when Regan learned, after the arrest of Davis, that the latter took the bonds, he acquiesced in or consented to what Davis had done. There was no evidence tending to prove that the question of Davis taking for his own use any money or bond owned by Regan was ever presented to or considered by the latter, prior to the arrest of Davis. Ratification or acquiescence by the owner after the offense was complete does not destroy the criminality of the act. Consent of the owner, first given after the consummation of a felonious taking and carrying away of his personal goods, does not purge the transaction, or keep it from being punishable as an offense against the public. Waters v. State, 15 Ga. App. 342, 83 S. E. 200; Jenkins v. State, 58 Fla. 62, 50 South. 582; 20 Corpus Juris, 421.

[2] Testimony tending to prove Regan's mental attitude with reference to the transaction after it was consummated, and after he was informed that Davis was the person who took the bonds, was properly excluded. The court also rejected offered testimony to the effect that Davis, after his arrest, obtained and returned to Regan the bond mentioned in the information. The law of the Canal Zone does not give to the res-

titution of stolen property after the theft the effect of condoning or absolving the offense, or of requiring a mitigation of the penalty incurred. This being so, it was not error to exclude the last-mentioned evidence. State v. Baxter, 89 Ohio St. 269, 104 N. E. 331, 52 L. R. A. (N. S.) 1019, and note, Ann. Cas. 1916C, 60.

Complaint is made of the court's refusal to give a requested charge which contained the following:

"If the jury find, and believe from the evidence, that the defendant took the bond by or with the express or implied consent of the owner, then your verdict must be for acquittal."

The only adduced evidence bearing upon the question of the owner of the bond mentioned in the information consenting or not consenting to Davis taking it was to the effect that there was an absence of such consent. There was no evidence to support a finding that, before the taking and sale of the mentioned bond by Davis were consummated, the owner thereof either expressly or impliedly consented to such taking, or even thought of or .contemplated such an occurrence. It follows that the court did not err in refusing to give the above mentioned charge.

There is no error in the record. The judgment is affirmed.