## Skaggs v. Big Sandy Commercial Bank.

(Decided Nov. 25, 1932.)

CALDWELL & GRAY and C. F. SEE, Jr., for appellant.
CAIN & THOMPSON and VINSON & MILLER for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—
Reversing.

The Big Sandy Commercial Bank brought this action against Andrew Skaggs on the following notes executed to the bank by the Skaggs Hardware Company: One note dated October 15, 1929, for $1,000, due four months thereafter; one note for $2,200, dated

December 11, 1929, due two months thereafter; one note for $500, dated December 17, 1929, due two months thereafter; one note for $1,550, dated January 27, 1930, due two months thereafter. It was alleged in the petition that the Skaggs Hardware Company was a partnership, composed of C. C. Skaggs and Andrew Skaggs. Andrew Skaggs by his answer denied that he was a member of the firm of Skaggs Hardware Company when the notes were executed or the debt created. The case came on for trial before a jury. The proof showed these facts: In the spring of 1927, Andrew Skaggs and C. C. Skaggs formed a partnership and began operating a hardware store at Ft. Gay, which is on the Big Sandy river opposite Louisa. Later they bought out a furniture store in Louisa and moved their hardware store over to that store, continuing to do business in the name of Skaggs Hardware Company, and on June 28, 1927, they opened an account as such with the bank. On July 9, 1927, Andrew Skaggs sold out to C. C. Skgags, and C. C. Skaggs executed to him a note for $4,000, J. N. Marcum being his surety on the note and Marcum being one of the directors of the bank, and he was told of the sale which Andrew Skaggs had made to C. C. Skaggs. C. C. Skaggs continued to make deposits in the bank in the name of the Skaggs Hardware Company and draw checks as before in that name. On July 12, 1927, the first note to the bank was executed and other notes from time to time were given as money was needed in the store. These notes were renewed from time to time; the notes sued on being the last renewals. The cashier of the bank, who had no notice of the withdrawal of Andrew Skaggs from the firm, took the notes. There was some proof of facts tending to show that the executive officers of the bank had notice of the withdrawal of Andrew Skaggs from the firm, or in the exercise of ordinary care should have known this. The jury found for the bank, and Andrew Skaggs appeals.

Among other instructions, the court, over the objection of the defendants, gave the jury these:

"No. 1. If the jury believe and find from the evidence in this case that the defendant Andrew Skaggs was a partner with C. C. Skaggs under the firm name and style of Skaggs Hardware Company, then the jury should find for the plaintiff the sum of $2,200.00 with interest from February 11,

1930; $1,559 with interest from March 27, 1930; $1,000.00 with interest from February 15, 1930 and $500.00 with interest from February 17, 1930 less a credit of $721.88 as of August 23, 1930, unless the jury find as in Instruction No. 2.

"No. 2. If the jury find and believe from the evidence that the plaintiff Bank had actual notice from either of said partners of the retirement of Andrew Skaggs from said partnership, if such there was, or received knowledge of such facts as would in the exercise of ordinary care have led it to conduct an investigation that would have disclosed such retirement of said Andrew Skaggs, if such there was, before it took the original notes and the several renewals thereof, including the identical notes above mentioned, then the jury should find for the defendant, Andrew Skaggs, as to such notes, if any, as were taken by plaintiff after such notice or knowledge was reecived; and in that event, should find for the plaintiff as to the remainder of such notes."

After the argument of the case to the jury, this occurred:

"After the retirement of the jury to the room for deliberation and after deliberating for nearly an hour one of the ladies on the jury returned in open court and asked the judge if they could find a less amount than the whole amount sued on and the judge instructed that instruction No. 1 controlled them in their verdict, and further that the court erred in that he did not instruct them on the whole law of the case and that they were the judges of the law and it was their duty to read the instructions and follow them."

The statement of the court to the jury that instruction No. 1 controlled them in their verdict may have misled the jury, for by No. 1 the jury were told to find for the plaintiff the amount of the notes, and they may not have understood that they were to take into consideration instruction No. 2. This is emphasized by the fact that the court added that he had erred in that he did not instruct them on the whole law of the case. No. 2 and not No. 1 was the controlling instruction in the case on the question asked by the juror, and was not referred to.

In instruction No. 2 the court told the jury, in effect, that, if the bank had notice or knowledge of the retirement of Andrew Skaggs "before it took the original notes and the several renewals thereof, including the identical notes above mentioned," then the jury should find for the defendant as to such notes, if any, as were taken after such notice or knowledge was received. The word "and" in the expression "the original notes and the several renewals thereof" seems to have misled the jury and to have led to the question which was asked the court. On another trial the court will substitute the word "or" for the word "and" in this expression; for it was not necessary that the bank have notice when all these notes were given. It was sufficient if the bank had notice at the time a particular note was given, so far as that note was concerned. Under all the facts, the court concludes that there was prejudicial error here, and that a new trial should be granted.

The court did not err in refusing a peremptory instruction. The rule is that, if there is any evidence, the question is for the jury. While no formal notice of dissolution was given by the parties, facts were shown on which it is a question for the jury whether the executive officers of the bank from the facts known to them should have known of the dissolution. What was said to Marcum in a private talk was not notice to the bank, unless brought to the knowledge of its executive officers; Marcum being only a director. A like statement was made to Sanford Lyons, who was the vice president of the bank, but not when he was acting as president in the absence of the president. He was one of the directors, and, so far as the record shows, the only thing he did was to attend the meeting of the directors. The authority of a vice president varies in different corporations, and a notice to him would not be a notice to the corporation when not acting as president, unless in a matter which is shown to be within the authority conferred upon him by the corporation. Many vice presidents have no executive duties except in the absence of the president.

Judgment reversed, and cause remanded for a new trial and further proceedings consistent herewith.