## Skaggs v. Marcum.

(Decided Feb. 24, 1933.)

VINSON & MILLER and CAIN & THOMPSON for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

C. C. Skaggs executed his note to the appellant and plaintiff below, Andrew Skaggs, whereby he obligated himself to pay plaintiff the sum of $3,400. The note was indorsed by appellee and defendant below, J. N. Marcum, and also by W. W. Skaggs. It was renewed when it became due by the same parties in the same amount. This action was filed in the Lawrence circuit court by plaintiff against the maker of the last note and his indorsers to recover the amount of it. C. C. and W. W. Skaggs made no defense, and judgment by default went against each of them; but appellee, J. N. Marcum, defended, and alleged in his answer, that prior to the execution of the first note plaintiff Andrew Skaggs, and the maker of the note, C. C. Skaggs (uncle and nephew), were partners in the hardware and furniture business in Louisa, Ky., and that plaintiff pretended to sell his interest to his nephew for and in consideration of the amount of the note, and that it was executed in the pretended purchase of plaintiff's one-half interest in the mercantile partnership; that the said pretended sale was collusive and fraudulent, and was ostensibly entered into for the purpose of defrauding defendant, or whomsoever C. C. Skaggs might obtain as indorser on his note; that the one-half interest of plaintiff in the partnership business was worthless at the time the note was executed, and when the alleged purchase of it by C. C. Skaggs was made, because the firm owed more than all of its available assets, and for which reason the note was without consideration, and that the arrangement between Andrew and C. C. Skaggs culminating in its execution was entered into by them for the purpose

of deceiving and defrauding defendant, who did not know any of such alleged facts at the time he indorsed either the original or the renewal note. Following pleadings made the issues: The case was transferred to the equity docket and tried by the court sitting as a chancellor, who, after proof taken and submission, sustained the defense interposed by Marcum, and dismissed the petition as to him. From that judgment plaintiff prosecutes this appeal.

The law seems to be well settled that, where the principal is competent to enter into the particular contract any defense that would be available to him would likewise excuse his surety, and which includes the defense of want of consideration. That general rule is stated in the text of 50 C. J. 21, sec. 19, in these words: "Where the obligation is invalid as between the original parties by reason of a total lack or failure of consideration, it will not bind the surety. * * * But in case of a partial failure of consideration, it is for the principal and not the surety to elect whether to avoid the principal contract on that ground or only to claim a pro rata deduction." See, also, 21 R. C. L. 1077, sec. 118. Illustrations of the rule holding the surety liable (if he is competent to contract), although the principal is not liable because of his legal disability to enter into such a contract, are to be found in the numerous cases from this court and other courts where recovery was permitted against the surety of an infant, a married woman, or a lunatic under circumstances relieving the incompetent from liability. That rule of law is so well settled in the jurisprudence of this country that we deem it unnecessary to fortify it with opinions so holding. No such defense as that was interposed in this case, but only the one which, if true, would have also relieved the principal, C. C. Skaggs, from liability on the note forming the basis of this action. The issue is therefore reduced to one purely of fact, and which must be determined by the testimony heard at the trial.

Defendant (Marcum) in giving his testimony stated no fact even remotely sustaining any part of the defense he interposed. The substance of his testimony was, that he was approached by C. C. Skaggs to indorse the note with the statement that it was executed for his partner's half interest in the business of the firm, and that he complied with the request without reluctance or

hesitation. C. C. Skaggs was introduced by defendant, and he testified that he and plaintiff, before embarking in business in Louisa, were partners in the same character of business at Fort Gay, W. Va., just across the Big Sandy river from Louisa; that they bought a similar business in Louisa, and removed the West Virginia stock to the latter place and consolidated it with the one that they had purchased there; that shortly after such consolidation negotiations began between the two for the retirement of plaintiff from business, resulting in an agreement for C. C. Skaggs to buy his interest at the amount that he had put into the firm, which was agreed by them to be $3,400, that at that time their stock would invoice at cost price figures as much as twice that sum, but some of the articles in their stock were old, and market prices as to others had declined, and, possibly, if the stock were disposed of at a forced cash sale, it would not have realized much, if any, more than the indebtedness of the firm; that the purchase was made about three months after the removal to Louisa, at which latter date an invoice was made of the stock; that sales were made therefrom up to the date of the purchase of plaintiff's one-half interest as well as new goods added to the stock, but no invoice was taken at the time of the dissolution of the firm. Notwithstanding such facts, the witness testified that he "figured it would work out and we would continue to outgrow it," and with that hopeful conception of the situation he agreed to and did execute the note for his partner's half interest, and continued to operate the business for some considerable time thereafter, during which he contracted increased indebtedness, and was eventually compelled to and did go into bankruptcy. See case of Skaggs v. Big Sandy Commercial Bank, 246 Ky. 157, 54 S. W. (2d) 650.

The most critical examination of the testimony, as so given by C. C. Skaggs, reveals nothing more than an unwise bargain on his part. He was hopeful that he could run the business alone and pay its obligations, together with the note he executed to his uncle for the latter's interest, and thereby become sole proprietor, but about which he miscalculated. Not an element of fraud is developed in the testimony by either member of the partnership, and it is quite apparent that C. C. Skaggs, the principal in the note, if he had made the same defense, would have been unsuccessful. He at least secured the good will of the business that had

been operated in the same building by the firm who formerly owned it, and continued therein until the dissolution between the two members of the firm, and obtained all the advantages of that good will, as well as that accruing from the location of the business. The book value of the stock is nowhere disputed, and it is positively proven that plaintiff put into the firm a sum equalling the amount of the note. While the amount of the stock at the time of the dissolution is not shown, it may be fairly assumed that it approximated its value duly ascertained three months prior thereto; but the amount of the indebtedness of the firm at any time is nowhere stated. We therefore repeat, that, at most, the evidence discloses a state of facts that may have generated hesitancy in one more cautious and prudent than C. C. Skaggs; but bad judgment on his part, unaccompanied by any deceitful conduct on the part of Andrew Skaggs, furnishes no defense to the note, nor does it prove "a total lack or failure of consideration" so as to relieve the surety under the legal rule, supra.

The most that can be said is, that in the circumstances and surrounding conditions, C. C. Skaggs paid for his partner's one-half interest an exorbitant price, but he did so, so far as, the testimony discloses, voluntarily and with a knowledge of all of the facts, and which would not sustain a defense of even a partial failure of consideration so as to enable him to pro tanto relief if he had interposed it, when unaccompanied (as is true in this case) by any fraud on the part of the obligee in the note. We therefore conclude that the court erred in dismissing the petition and in adjudging appellant not liable.

Wherefore, the judgment is reversed, with directions to set it aside, and to render one against appellee for the amount of the note, with interest and costs, and for other proceedings not inconsistent with this opinion.