LAWHORN v. STATE.

Opinion delivered June 9, 1913.

1.  CHATTEL MORTGAGE—SALE OF MORTGAGED PROPERTY—CRIMINAL INTENT.
    —Under Kirby's Digest, § 2011, making it unlawful for any one to
    sell, barter or exchange property subject to mortgage, it is neces-
    sary, in order to convict defendant, to show that he intended, by
    the barter, sale or exchange, to defeat the holder of the mortgage
    lien in the collection of the debt thereby secured.  (Page 476.)

2.  CHATTEL MORTGAGES—SALE—QUESTION FOR JURY.—Where defendant
    is indicted and tried for unlawfully disposing of mortgaged prop-
    erty, he is entitled to have the issue of his authority to dispose of
    the property submitted to the jury.  (Page 477.)

3.  CHATTEL MORTGAGES—SALE OF MORTGAGED PROPERTY—CRIMINAL RE-
    SPONSIBILITY.—Where the mortgagee of property disposed of the
    same with the consent of the mortgagor, but agreed to deliver the
    proceeds of the sale to the mortgagor, the mortgagee is not crim-
    inally responsible under Kirby's Digest, § 2011, although he fails
    to deliver the proceeds to the mortgagor.  (Page 477.)

Appeal from Fulton Circuit Court; *George W. Reed,*
Judge; reversed.

STATEMENT BY THE COURT.

The appellant was tried and convicted at the Feb-
ruary term, 1913, of the Fulton Circuit Court for the
offense of selling mortgaged property.  The indictment
alleged, substantially, that the said I. E. Lawhorn on the
10th day of October, 1911, with the intent to cheat and
defraud one E. L. Jackson, did feloniously sell, barter,
and dispose of six hundred pounds of seed cotton of the
value of $18, upon which cotton the said E. L. Jackson
then and there had a lien by virtue of a certain mort-
gage.  Many exceptions were saved at the trial and have
been presented for our consideration, but we discuss
only the question of instructions, as it is decisive of
the case.

E. L. Jackson for the state testified as follows:
That in May, 1911, he and one R. A. Holloway were
engaged in the general mercantile business, as partners,
and the defendant Lawhorn became indebted to them in
the sum of thirty-five dollars, and to secure this debt,
gave them a mortgage on a crop of cotton to be raised

by him in that year, described as "two-thirds of six acres of cotton to be raised on J. H. Decker's farm in the year 1911." He further testified, that on the day before the defendant sold the cotton, he was told by him that he was going to take the cotton down to Salem and sell it, as he could get more for it there than he (witness) could pay him for it. That he did not consent that this should be done, but he told the defendant that if he did do so he must bring him the proceeds of it; "that is, must pay me what the cotton brought, and that is the only way I gave my consent." That the defendant paid him only a part of the money derived from the sale of the cotton. It was also shown that before the cotton was picked, Jackson bought out the interest of his partner and became the sole owner of the debt secured by the mortgage.

The evidence on the part of the defendant tended to show that Jackson consented to the sale, but required that the proceeds of the cotton be paid him. That ten dollars of the money was paid to a merchant at Salem for supplies furnished defendant, on the credit of his landlord, to enable him to make a crop and one dollar was paid to Jackson and the remainder was spent for other purposes, not authorized by Jackson. Other cotton was picked by defendant, but became involved in litigation between Jackson and defendant's landlord, and Jackson failed to collect his entire debt.

Instructions were asked by defendant to the effect that if Jackson consented to the sale of the cotton, or that if the sale was not made with the intent existing at the time to defeat the enforcement of the mortgage, that defendant could not be convicted. These instructions were refused and defendant was convicted and given a sentence of six months in the penitentiary, and this appeal is prosecuted from that judgment.

*Kay & Black,* for appellant.

1. Before defendant could be found guilty it must be shown that he made the sale with the intent to defeat the mortgagee's debt. This question should have been

submitted to the jury. 68 Ark. 491; Kirby's Dig., § 2011; 34 Ark. 469.

2. Where the mortgagee consents to the sale, the mortgagor can not be convicted, even though he violates a condition that the proceeds should be accounted for. 69 Iowa, 741; 94 Ga. 766; 63 Ala. 61; 7 Cyc. 62, notes.

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

1. It is not necessary to show a criminal intent under the statute. 43 Ark. 284.

2. Appellant did not have the consent of the mortgagee. 63 Ala. 61; 69 Ia. 741; 37 Ark. 412; 44 S. W. 491; § § 1868, Sand. & Hill's Dig., 2011 Kirby's Dig., and 1693, Mans. Dig. The offense is complete when the property is sold. In the sections in S. & H. Dig. and Kirby's Dig., *supra,* there is no provision relating to consent on the part of the mortgagee. The Legislature has thus taken away from the mortgagee the right of consent to sale. There is no error.

SMITH, J., (after stating the facts). It is insisted upon the part of the State that "It is not necessary to show a criminal intent, since the statute itself defines what shall constitute the crime," and to support this position, we are cited to the opinion by Chief Justice COCKRILL in the case of *Beard* v. *State,* 43 Ark. 284, where he said: "The statute (disposing of mortgaged property) upon which the indictment in the case is based, makes it a crime to dispose of personal property under the particular circumstances. When a party voluntarily does the act prohibited, he is charged with the criminal intent of doing it, and no further intent need be shown." *Seelig* v. *State,* 43 Ark. 96; *U. S.* v. *Ulrici,* 3 Dillon, 532; *Com.* v. *Nash,* 7 Met. (Mass.), 472.

There was a strong dissenting opinion in that case by Justice EAKIN, in which he contended that a conviction could be had only where the proof showed the sale was made with the intent to deprive the mortgagee of his debt. But the opinion in that case was based upon section 1693 of Mansfield's Digest, which has since been

amended by the act of March 7, 1893, which is carried into Kirby's Digest as section 2011; and this section now expressly requires that the proof show that the sale, barter, exchange, removal or disposal of the property be made with the intent to defeat the holder of the lien in the collection of the debt secured thereby. Moreover, defendant was entitled to have the issue of his authority to sell the cotton submitted to the jury. If Jackson gave the defendant permission to sell the load of cotton in question, then such permission and the sale thereunder extinguished the mortgage lien thereon. Jackson could not waive his lien, and afterwards attempted to assert it in a criminal prosecution, because the disposition had not been made of the proceeds of the sale of the mortgaged cotton which should have been made. This prosecution and conviction was for disposing of mortgaged property and there was no mortgage lien after a sale had been made with the mortgagee's assent.

The judgment in this case is therefore reversed and the cause remanded.