OSBORNE *v.* STATE.

## Opinion delivered October 13, 1913.

1. REMOVAL OF MORTGAGED PROPERTY—PROOF OF DEBT.—It is necessary in actions involving the removal mortgaged property, upon which a lien exists, with the intention to defeat the holder of the lien and the collection of the debt secured by the mortgage or deed of trust, to allege the existence of the debt at the time of the commission of the offense, for unless there be a debt in existence, there can be no lien. (Page 445.)

2. MORTGAGES—EVIDENCE—MORTGAGE AND DEED OF TRUST.—Where an indictment charges that defendant sold property upon which one W held a mortgage, the admission of a deed of trust in evidence given to secure the debt, is proper, since a mortgage and deed of trust are the same in legal effect. (Page 445.)

3. REMOVAL OF MORTGAGED PROPERTY—EVIDENCE OF INTENT—PRIOR MORTGAGE.—When defendant is charged with having sold property mortgaged to W, evidence that one S held a prior mortgage on the property in question, and that defendant sold the property with the permission of S, is admissible as tending to show that defendant had no intention of defeating the lien held by W, the second mortgagee. (Page 446.)

Appeal from St. Francis Circuit Court; *J. M. Jackson,* Judge; reversed.

STATEMENT BY THE COURT.

Appellant was indicted for the crime of disposing of mortgaged property, upon which a lien existed, with the intent to defraud the holder of the lien, the indictment alleging:

"* * * That said Chester Osborne, in the county and State aforesaid, on the 20th day of May, A. D. 1912, then and there unlawfully and with the intent to cheat and defraud one Eugene Williams, did sell one red cow, of the value of twelve dollars, upon which the said Eugene Williams then and there had a lien, by virtue of a certain mortgage or deed of trust, which was duly executed, acknowledged and delivered to the said Eugene Williams by the said Chester Osborne; that the said Chester Osborne's sale of said cow was with the felonious intent to defeat the said Eugene Williams, the holder

of said lien, and the collection of his debt, which was more than ten dollars, against the peace, etc."

A demurrer was interposed to the indictment and overruled.

The testimony shows that after the overflow of the Mississippi River in 1912, the appellant sold a red cow, for the disposition of which he was indicted, to one McFall, who paid him $12.50 for her and butchered her some time in the fall, in September or October. It was also shown that he had executed a deed of trust on the 30th day of March, 1912, to S. H. Mann, as trustee for Eugene Williams, to secure certain indebtedness, conveying certain personal property particularly described, and "twenty-five head of cattle," "all the cattle I now own," etc., along with the crops of corn and cotton to be raised by him that year.

Appellant testified that he sold the cow, and did so openly, with the consent and under the direction of Theo Bond, a member of the firm of Scott Bond & Sons, who held a prior mortgage upon said cow, particularly describing her, dated March 22, 1911. That he needed some money to move some tenants back on his place, and went to Mr. Williams first for the money, and couldn't get any money from him. He then went to Scott Bond & Sons, and they told him to sell the cow, included in the mortgage, and take that money and use it for the purpose of putting his tenants back on the place after the overflow, which he did.

The court refused to allow him to introduce and read in evidence the mortgage to Scott Bond & Sons, of said date, in which the cow was included with other property, to secure the payment of a note for $500 and advances. A member of that firm testified that appellant came to them for money to move the family back into the bottoms on his place, and, not having the money, they directed him to sell the red cow covered by their mortgage and get the money, and that he did so by their direction and with their knowledge and consent. That he regarded that his firm became the owner of the cow after October

15, but they had not foreclosed the mortgage. "It was our cow, but still in his possession. * * * We took over possession of the property after the maturing of the mortgage. We didn't actually take it from the defendant. It was already ours, I mean, because he hadn't paid the mortgage debt. We had not agreed on the price of the animal, but he told us that the cattle were there for us for whatever he owed."

The court also refused to allow this witness to state what amount appellant owed to said Scott Bond & Sons, on the debt secured by their mortgage on the date of the sale of the cow by him, and likewise the value of the property described in their said mortgage which matured October 15, 1911.

Appellant testified that he did not give any mortgage to Eugene Williams on the red cow. That one George Walker drew the mortgage up in his presence alone, and wanted a mortgage on all his stock, and he explained to him that there was some stock or cattle that Bond had a mortgage on, describing it, including one red cow, and that Walker stated, "That is nothing. I can take a second mortgage. That will be all right. That will never hurt you." That he was misled by Walker in giving the mortgage to Williams upon the cow, if it was included therein. That he had no intention to include it. That he did not intend to give him a lien at all on the red cow and the other property in the Bond mortgage, as he explained to Walker at the time he drew the mortgage. He testified further that he had not paid the debt secured by the mortgage. That after the overflow, he came to Forrest City to get $5 from Mr. Eugene Williams to put some negroes back on his place, and Mr. Williams refused to let him have it, and, being under obligations to them, he then went to Mr. Bond to get the money, and he not being present, went to Theo. Bond, a member of the firm, who told him he didn't have the money, but that the negroes ought to be put back on the place to make a crop and to see Mr. Williams, who was furnishing him, and being told that Mr. Williams had refused to let him

have it, he said I had some cattle upon which they had a mortgage, and that I could go and get them and sell them. That that was all he could do. That he brought the cow down in broad daylight and carried it to McFall's, in Scott Bond & Sons' gasoline launch, and offered it for sale and was paid $11.95 in money, which was used to move the tenants back on his place. That he would not have disposed of it, except under the instructions of Mr. Bond, and further:

Q. At the time you sold that cow under the directions of Theo. Bond, did you owe Scott Bond & Sons?

A. Yes, I did. I owed them a debt that was due under the mortgage, that was past due, and a debt which was far more than the value of the stock named in the mortgage.

This question and answer was objected to and excluded from the jury's consideration, over appellant's exceptions. He said further that he did not have in mind at all that Mr. Williams had a mortgage on the cow nor any idea or intention of violating the terms of his mortgage by selling anything that the mortgage covered.

Walker testified that he remembered taking the mortgage for Mr. Williams; that Osborne told him that he had twenty head of cattle, and that was all he had. He told me to put it in the mortgage. He didn't tell me at the time not to include in the Williams mortgage the cattle in the Scott Bond mortgage. He then explained his interest in the transaction by saying that he didn't own half of the debt secured by the Williams mortgage, but that he was to be paid half the profits arising from the collection of some claims of a bankrupt firm purchased by Williams, one of which was owed by Chester Osborne.

The court instructed the jury, which returned a verdict of guilty, and from the judgment thereon, defendant prosecutes this appeal.

*J. W. Story,* for appellant.

1. The indictment is bad because it fails to allege that at the time the cow was sold a debt secured by the mortgage existed. 68 Ark. 491; 50 Ia. 194; 1 Tex. App.

438. In that the indictment alleges an offense in the alternative, it is also bad for uncertainty.

2. There is a fatal variance between the indictment and the proof. (a) It is not sufficient to admit in evidence a deed of trust conveying "twenty-five head of cattle, all the cattle I now own," without further evidence that the red cow described in the indictment was one of the "twenty-five head of cattle" mentioned in the trust deed. 2 S. W. 859.

(b) The instrument offered in evidence is a deed of trust executed to S. H. Mann, trustee, and is not a mortgage or deed of trust to Eugene Williams.

(c) The indictment charges the sale of a red cow upon which Eugene Williams had a lien, etc., whereas the testimony tends to prove that the deed of trust was taken to secure a debt due Eugene Williams and G. P. Walker jointly.

3. The court erred in excluding from the evidence a prior mortgage executed by the defendant to Scott Bond & Sons, duly recorded at the time the Mann trust deed was executed, which conveyed the red cow described in the indictment, and was unsatisfied at the time of the alleged sale. 12 So. 413; 4 S. E. 534; 158 S. W. 113.

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

1. The language of the indictment is sufficient to charge the existence of a debt secured by a lien to Eugene Williams, and that the amount of the debt was more than $10. It is sufficient.

On the contention that the indictment is bad for uncertainty, this court has ruled adversely to appellant's claim. *Brown* v. *State,* 109 Ark. 373; Kirby's Dig., § 2229.

2. The court was correct in admitting the deed of trust in evidence; also in submitting to the jury, upon the evidence, the question whether or not the red cow described in the indictment was included in the twenty-five head of cattle conveyed by the deed of trust.

3. The evidence is sufficient to show that Geo. P.

Walker had no interest in the mortgage. But if Walker had jointly owned the debt secured by the deed of trust, proof of that fact would not be such a variance as to call for a reversal. This court reverses only for errors tending to the substantial prejudice of a defendant. 93 Ark. 313.

4. Evidence of the execution of a prior mortgage was properly excluded.

KIRBY, J., (after stating the facts). It is contended that the court erred in overruling the demurrer to the indictment and in the admission and exclusion of certain testimony.

It is necessary, in cases of removing mortgaged property, upon which a lien exists, with the intention to defeat the holder of the lien and the collection of the debt secured by the mortgage or deed of trust, to allege the existence of the debt at the time of the commission of the offense, for, unless there be a debt in existence, there can be no lien. *McCaskill* v. *State,* 68 Ark. 491.

The indictment herein charges that the appellant, with the intent to cheat and defraud one Eugene Williams, sold the cow, of a certain value upon which "the said Eugene Williams then and there had a lien by virtue of a certain mortgage or deed of trust, duly executed; * * * that the said Chester Osborne's sale of said cow was with the felonious intent to defeat the said Eugene Williams, the holder of said lien, in the collection of his debt, which was more than ten dollars, etc."

The indictment does not say in exact words that there was a debt in existence from appellant to Eugene Williams, but it does say that he sold the cow with the felonious intent to defeat the holder of said lien in the collection of his debt, which was a sufficient allegation of the existence of the debt.

We do not think the court erred in the admission of the trust deed executed by the appellant to S. H. Mann, as trustee, to secure the payment of the debt to Eugene Williams, under the allegations of the indictment. The court has held that a mortgage and deed of trust are the

same in legal effect, and it could make no difference to the accused in giving him notice of the offense with which he was charged, and there is no variance from the allegations of the indictment in the proof of the deed of trust.

We are of the opinion that the court did err, however, in refusing to allow appellant to introduce his mortgage to Scott Bond & Sons, in which the red cow, with the disposition of which he was charged in the indictment, was included. It also erred in refusing to permit the appellant to prove the amount of the indebtedness still existing, secured by the mortgage to Scott Bond & Sons, as well as the value of the property included in it, at the time of the sale of the cow. There must be shown to exist an intention to defeat the holder of the lien in the collection of his debt, or facts from which such intention can reasonably be inferred, in order to convict the defendant of the charge, and if he could show, as he had the right to do, that the property was covered by a prior mortgage to secure a debt past due and still existing, much larger in amount than the entire value of all the property included therein, and that he sold the cow with the approval of the holder of the said prior mortgage, it would, if not conclusive, tend strongly to show that there was no intention by the sale to defeat the holder of the lien under the second mortgage in the collection of his debt, and these errors were highly prejudicial to appellant.

The other contentions are not noticed, as the matters complained of will doubtless not occur upon a second trial. For the errors indicated, the judgment is reversed and the cause remanded for a new trial.