· SMITH v. STATE.

## Opinion delivered November 23, 1925.

1. CRIMINAL LAW—SUFFICIENCY OF EVIDENCE TO SUPPORT VERDICT.—
   On appeal, a verdict of guilty must be tested by the strength
   of the State's evidence.

2. RECEIVING STOLEN GOODS—EVIDENCE.—Evidence held sufficient to
   sustain conviction of receiving stolen goods and having then in
   possession.

3. CRIMINAL LAW—JURISDICTION.—Local jurisdiction of all statutory
   offenses is in the county where the offense was committed.

4. CRIMINAL LAW—POSSESSION OF STOLEN GOODS—VENUE.—Under
   Crawford & Moses' Dig., § 2871, providing that any person
   liable to be prosecuted as receiver of stolen personal property
   may be tried in any county where he "had or received" such prop-
   erty, it was intended to allow the trial in any county where the
   accused either received the property at first or at any time after-
   wards had it.

Appeal from Sebastian Circuit Court, Ft. Smith Dis-
trict; John E. Tatum, Judge; affirmed.

John P. Roberts and Evans & Evans, for appellant.

H. W. Applegate, Attorney General, and John L.
Carter, Assistant, for appellee.

HART, J. Hubert Smith was indicted and found
guilty of feloniously receiving and having in the city of
Fort Smith, Arkansas, an automobile, knowing it to be
stolen.

According to the testimony of E. B. Brown, a Ford
touring car of the value of $400 was stolen from his
garage in the city of Fort Smith, Sebastian County,
Arkansas, on Monday night about the 13th or 14th of
April, 1924. The witness received information that a
car of the same description was in the possession of
Hubert Smith at his residence in the southern part of
Logan County, Arkansas. The witness first went to
Booneville in Logan County and secured a warrant for
the arrest of Hubert Smith. He then went to a school
house where Hubert Smith was teaching school in Logan
County. Brown told him that he believed, from the
description of the car that Smith had, that it was his

car, and asked him what he had done with it. Smith said
that he had sold it to a man named Carl at Spiro, Okla-
homa, who was a stranger to him. Brown asked him if
he knew where the car was at that time, and Smith
replied that he did not. Brown then told Smith that he
was accused of being mixed up in the matter. Smith
proposed to dismiss his school and help hunt the car.
Brown told Smith that he believed that he knew where
the car was, and told him that he had a warrant for him
and believed that he was lying to him about not knowing
where the car was. Smith then told Brown that he had
sold the car in Wichita, Kansas. Brown then proposed
to him that, if he would go with him to get the car and
they found it all right, he would not arrest Smith.
They agreed to this and went to Wichita, Kansas, and
got the car. Brown had to pay $200 before he could get
the car. We quote further from the testimony of Brown
as follows: "Q. What reply did he make? A. I told
him I knew who he got the car from. Q. Who? A.
From Neal Fuller. Q. Did he make a reply to that?
A. No, sir; he did not make any reply. I asked him if
he was not with Neal Fuller, the Saturday before the car
was stolen Monday night, and he said he was. I said
you and him met at Booneville, and you waited for Fuller
to bring you this car, and you knew it was going to be
stolen before it was stolen, and you were at Booneville
waiting for it? Q. Did he make a reply to that? A.
No sir; he just hung his head." Brown also testified
that he had nothing to do with the arrest and prosecu-
tion of the defendant except as compelled to testify after
being subpoenaed in the case.

According to the testimony of George L. Hays, along
about the 18th or 19th of April, 1924, he saw the defend-
ant in Booneville, and told him and his brother that they
could go home with him that night if they wanted to.
The defendant told him that Neal Fuller had called him
from Fort Smith that day and told him that he had a
car he thought would suit him, and a price that would

suit him, and that it would be there for him to look at that evening. The defendant said that Neal knew that he was on the market for a car if he could get one that suited him.

According to the testimony of John Roberts, he asked the defendant where he got the car, and he told him that he had bought it from a glass blower at Booneville named Allen.

According to the testimony of Clyde Brownfield, he agreed to purchase the car from the defendant at Bonanza, Arkansas, in June, 1924, and came to Fort Smith in Sebastian County, Arkansas, in the car with the defendant. The witness drove the car, and the defendant came with him to Fort Smith in it. After they arrived in Fort Smith, the witness paid the defendant for the car. The witness then took the car to Wichita, Kansas, and sold it to a dealer there. The witness paid the defendant altogether $225 for the car.

On cross-examination, the witness answered that he had been tried on the day before on the charge of selling stolen property. He was referring to the car in question, and was acquitted of the charge by the jury trying him.

According to the testimony of Bob Williamson, the constable of Upper Township, Sebastian County, Arkansas, he knew the defendant, Hubert Smith, and went to see him about the 11th of June, 1924, at Ione in Logan County, Arkansas, and told him what his business was. The witness asked Smith what he had done with the car, referring to the one which Smith had recently come into possession of, and Smith said that he had sold it. The witness then asked him who he had got it from, and Smith replied that he had got it from John Allen, a glass blower at Fort Smith. The witness then asked Smith if he had not gotten his car from Neal Fuller, and he said, "Well, no. What makes you think so?" Smith stated further that he had sold the car to a man named Carl at Spiro, Oklahoma. The witness asked him how Allen, the glass blower, knew that he wanted a car, and Smith replied that

he did not get it from Neal Fuller; but that Neal Fuller knew that he was in the market for a bargain in a car and sent Allen down with the car.

According to the testimony of the defendant and the witnesses in his behalf, he bought the car in good faith, not knowing that it had been stolen.

It is not necessary to abstract the defendant's testimony, for the reason that the verdict of guilty must be tested by the strength of the evidence for the State. The defendant was indicted under § 2493 of Crawford & Moses' Digest, which provides that whoever shall receive or buy any stolen chattels knowing them to be stolen, with the intent to deprive the true owner thereof, shall, upon conviction, be punished as in cases of larceny. Thus it will be seen that the evil to be guarded against by the passage of the statute was to prevent persons from rendering efficient aid to the one stealing the property with intent to deprive the true owner thereof.

In the case at bar, the evidence shows that the automobile had been recently stolen and was in the possession of the defendant. He sold it soon afterwards to one who in turn sold it to an automobile dealer in another State. These facts, together with the declaration of the defendant that he received it from another person, may be taken as sufficient evidence that he received it from the thief, instead of stealing it himself. His contradictory statements as to how he came into the possession of the automobile and where he disposed of it may also be considered in determining his guilt or innocence. His silence and evasive answers when questioned with regard to his guilty knowledge of the theft of the automobile were all proper matters for the consideration of the jury. All the facts and circumstances together were sufficient to warrant the jury in finding the defendant guilty. See *Sons* v. *State,* 116 Ark. 357.

The record shows that the automobile was stolen in the city of Fort Smith in Sebastian County and carried to Logan County, Arkansas, and received by the defend-

ant there. The defendant then contracted. to sell the
automobile-to another person. and went with that person
to the city .of Fort Smith and received his pay for it in
that city. The automobile was then taken by the person
who bought it from the defendant into the State of Kan-
sas and sold there.

The circuit court was requested to charge the jury
that, if they believed that the defendant first bought or in
any way received the automobile in Logan .County and
afterwards brought it to Fort .Smith and there. sold it,
he could not be convicted of the crime of receiving stolen
property. The court refused to give this instruction, and
gave other instructions which allowed the jury .to con-
vict the defendant upon proof that . he. knowingly had
the stolen automobile in Sebastian County with the intent
to deprive the owner of it. .

The defendant was indicted under § 2493 of Craw-
ford & Moses' Digest, which reads as follows:

"Whoever shall receive or buy any stolen goods,
money or chattels, knowing them to be stolen, with intent
to deprive the true owner thereof, shall, upon conviction,
be punished as is, or may be, by law prescribed for the
larceny of such goods or chattels in cases of larceny."

In this.connection we must also consider § 2871 of the
Digest, which reads as follows:

"When any person shall be liable to be prosecuted
as the receiver of any personal property that may have
been feloniously stolen, taken or embezzled, he may be
indicted, tried and convicted in any county where he
received or had such property, notwithstanding such lar-
ceny may have been committed in another county."

Counsel for the defendant call our attention to the
fact that, while at common law larceny was regarded as
a felony committed where the goods were feloniously
taken, yet for the purpose of jurisdiction the crime was
treated as having been committed within any jurisdiction
into which the property was afterwards carried. This
rule proceeds on the legal assumption that, where the

property has been feloniously taken, every act of removal may be regarded as a new taking and asportation. Hence it is contended that § 2871 was passed for the purpose of restricting the jurisdiction of courts in cases of receiving stolen property to the county in which the property was received.

If such was the purpose of the statute, it need not have been passed. The crime of receiving stolen property is purely statutory, and under our Constitution, which follows the common law, the local jurisdiction of all statutory offenses is in the county where the offense was committed. So, the offense having been created by statute, the jurisdiction would necessarily be confined to the county where it was committed, unless the Legislature otherwise provided. In other words, the crime being purely statutory, if § 2493 stood alone, the jurisdiction would be fixed in the county where the stolen property was received. The evident purpose of the Legislature in passing § 2871 was to prevent trade and commerce in stolen chattels in this State. The Legislature had the right to make it a crime to receive chattels knowing they were stolen with the intent to defraud the owner, and this is the gist of the offense.

We can perceive no reason why the Legislature could not make it a crime to have in possession stolen property with the intent to deprive the owner of it in any county into which the property was carried as well as the county in which it was originally received.

But it is insisted that the language of § 2871 is not sufficiently comprehensive for that purpose. We cannot agree with this contention. The language of the statute is that when any person is liable to be prosecuted as the receiver of stolen property, he may be indicted in any county where he received or had such property.

It is claimed that the words, "or had," have no meaning of their own, but are synonymous with the word "receive." The dictionary meaning of "have" is to hold in possession or control, and we think that jurisdiction

is conferred to try the accused in any county where he receives the stolen property or has possession of the stolen property as receiver. This view is in accord with *Wills* v. *People,* 3 Parker's Cr. Rep. (N. Y.), p. 473.

In that case in construing a similar statute it was held that a person may be tried and convicted of the offense of feloniously receiving and having stolen goods, either in the county where the accused originally received the stolen property, or in any county in which he afterwards had it. In discussing the question the court said:

"The statute is that the receiver of stolen goods 'may be indicted, tried and convicted where he received or had such property, notwithstanding such theft was committed in another county.' (2. R. S. 726, par. 43). The reviser's note to this section is: 'New. In analogy to the rule which allows a prosecution for theft in any county where the stolen goods shall be carried. There is a similar English statute.' (3 R. S. 844, 845, 2d ed.) The English statute is that the receiver may be prosecuted 'in any county or place in which he shall have, or shall have had, any such property in his possession' (2 Russ. on Cr. 238), not using the word 'received' as our statute does. This shows that the natural meaning of our statute is its true meaning, and that it was intended to allow the trial in any county where the prisoner either received the property at first, or at any time afterwards had it. The words, 'or had,' are unmeaning without this interpretation."

We find no prejudicial error in the record, and the judgment must therefore be affirmed.