THOMAS D. HILL *v.* STATE OF ARKANSAS

5758                                    487 S.W. 2d 624

Opinion delivered December 4, 1972

*Mobley & Smith,* for appellant.

*Ray Thornton,* Atty. Gen., by: *James A. Neal,* Asst. Atty. Gen., for appellee.

John A. Fogleman, Justice. Thomas D. Hill was found guilty of disposing of property subject to a lien and sentenced to imprisonment for one year. He asserts the following points for reversal:

## I.

1. The verdict herein is contrary to both the law and the evidence.

2. There is no evidence to support a conviction of the defendant on a charge of disposing of property subject to a lien.

3. The criminal statute under which this defendant was prosecuted does not apply to the facts in this situation.

4. The trial court erred in that defendant's motions for dismissal of the charges and for a directed verdict should have been granted as a matter of law and also based upon the evidence.

## II.

The trial court erred in denying defendant's motion for a dismissal of the charges as this was clearly a prosecution to aid in the collection of a debt and as such violated the defendant's constitutional rights.

## III.

The Howard County Circuit Court was without venue or jurisdiction over the subject matter of this cause of action and should have dismissed said cause of action upon the motion of defendant.

## IV.

It was error for the court to allow the prosecutor to introduce into evidence the total amount of the debt owed to the Nashville Production Credit Association by defendant as this cause of action included only $19,000.00, particularly in view of the pretrial order denying this information to defendant's counsel.

## V.

The court erred in allowing prejudicial statements to be made by the prosecutor in his opening and closing arguments.

## VI.

The court erred in allowing the prosecuting attorney to attempt to impeach their own witness as no evidence was ever introduced of prior contradictory statements.

## VII.

The court erred by refusing to give defendant's requested instructions No. 1, 2, and 3.

Appellant Hill was charged with having disposed of six bulls, 136 cows and 65 calves by selling the same to Ted Powell for the sum of $19,000 on December 9, 1969, while the cattle were subject to a lien in favor of Nashville Production Credit Association by reason of a financing statement and security agreement executed by Hill on November 10, 1969, with the intent to defeat the Production Credit Association in the collection of the debt secured by these instruments.

The applicable statute is Ark. Stat. Ann. § 41-1928 (Repl. 1964), which reads:

It shall be unlawful for any person to sell, barter, exchange or otherwise dispose of, or to remove beyond the limits of this State or of any county in which a landlord's or laborer's lien exists, or in which a lien has been created by virtue of a mortgage or deed of trust, or to which title has been retained by the vendor, any property of any kind, character or description, upon which a lien of the kind enumerated above exists or to which title still remains in the vendor: provided, such sale, barter, exchange, removal or disposal of such property be made with the intent to defeat the holder of such lien or title in the collection of the debt secured by such mortgage, laborer's or landlord's lien or retention of title.

Since we find that there was reversible error in the denial of appellant's requested instruction No. 2, we first treat appellant's Point VII. The court gave its instructions 9 and 11 relative to the effect of the consent of Nashville Production Credit Association to the sale. By instruction No. 9, the jury was told that if it found other necessary elements of the offense and that the cattle were sold and disposed of by the said Thomas D. Hill without the consent of Nashville Production Credit Association, it would find Hill guilty. Instruction No. 11 read:

Members of the jury, you are instructed that if you find from the evidence presented in the trial of this

cause that the Nashville Production Credit Association, by or through its Board of Directors, one or more, its Manager, or any one of its employees consented to the sale of the cattle, you should acquit the defendant, Thomas Hill.

The court refused defendant's requested instruction No. 2, which reads:

You are instructed that consent may be expressed or implied from the conduct of the parties.

There is no question that the consent of the injured party is a defense to the charge, because there is no mortgage lien after a sale with the lienholder's consent. *Lawhorn* v. *State,* 108 Ark. 474, 158 S.W. 113; *Osborne* v. *State,* 109 Ark. 440, 160 S.W. 215; *Murry* v. *State,* 150 Ark. 461, 234 S. W. 425. See also, *Mitchell* v. *Mason,* 184 Ark. 1000, 44 S.W. 2d 672. The state argues that, in order to constitute a defense, the consent must be actual, not implied, and that the court's instruction No. 11 fairly and correctly states the law. We do not agree with the first argument and find instruction No. 11 incomplete in that respect. In arriving at this conclusion, we are influenced by the rule that a criminal statute must be strictly construed in favor of one accused. *Burke* v. *State,* 235 Ark. 882, 362 S.W. 2d 695, cert. denied, 373 U.S. 922, 83 S. Ct. 1523, 10 L. Ed. 2d 421. Nothing may be left to intendment and all doubts must be resolved in favor of the defendant in construing such statutes. *Stuart* v. *State,* 222 Ark. 102, 257 S.W. 2d 372. See also, *Ladwig* v. *Arlington Hotel Company,* 225 Ark. 972, 286 S.W. 2d 853. No case may be brought within the purview of a criminal statute by construction unless it is completely within the words of the statute. *Lewis* v. *State,* 220 Ark. 259, 247 S.W. 2d 195; *Giles* v. *State,* 190 Ark. 218, 78 S.W. 2d 70. This rule is applied in determining the meaning of the word "consent" in criminal statutes. *Baker* v. *State,* 147 Tenn. 421, 248 S.W. 548 (1923).

In its broadest sense "consent" may be either express or implied. *State* v. *Neterer,* 33 Wash. 535, 74 P. 668

(1903); Bouvier's Law Dictionary, Unabridged, Rawle's Third Revision. It may be based upon an express agreement or it may also be implied from actions, a course of conduct, silent acquiescence or even inaction. *In re Estate of Seeger*, 208 Kan. 151, 490 P. 2d 407 (1971); *Vick* v. *Zumwalt*, 130 Col. 148, 273 P. 2d 1010 (1954); *State* v. *Stanfield*, 1 S.W. 2d 834 (Mo. 1927).

Implied consent has been defined as that manifested by signs, actions or facts, or by inaction or silence, which raise a presumption that consent has been given. 15A C.J.S. 576, Consent; Black's Law Dictionary, Fourth Edition; Bouvier's Law Dictionary, Unabridged, Rawle's Third Revision; *In re Estate of Seeger*, supra; *Bartle* v. *Bartle*, 132 Wis. 392, 112 N.W. 471 (1907); *State* v. *Stanfield*, supra. Implied consent may be inferred from a course of conduct and the relationship between the parties. *Standard Accident Insurance Co.* v. *Gore*, 99 N.H. 277, 109 A.2d 566 (1954).

Although we have not specifically stated the foregoing principles as to implied consent, we have given them effect without stating them. See, e.g., *Kaplan* v. *Scherer*, 205 Ark. 554, 169 S.W. 2d 660. These principles have been given particular application in considering jury instructions in rape cases where consent of the female constitutes a defense. *Threet* v. *State*, 110 Ark. 152, 161 S.W. 139; *Jackson* v. *State*, 92 Ark. 71, 122 S.W. 101; *Mills* v. *United States*, 164 U.S. 644, 17 S. Ct. 210, 41 L. Ed. 584 (1897) (Writ of error to Circuit Court for Western District of Arkansas).

Even though the word "consent" does not appear in the statute, we must give it its broadest possible meaning in considering the criminal charge against defendant, because that is the meaning most favorable to the defendant in determining whether there was an intent, in the sense of the statute defining the offense, to defeat the holder of the lien in the collection of the debt secured by the instruments executed, or whether a lien was actually defeated by unauthorized acts of the defendant. We need not set out the testimony on which a finding of

implied consent might have been based. It is sufficient to say that evidence pertaining to the relationship between the appellant, the managing officers of the PCA and the purchaser, the knowledge and actions of these officers and the long period of inaction on the part of the PCA afforded substantial evidence to present a question of fact on this issue, as well as on the issue of express consent.

We are unable to say, however, that the jury was adequately advised of the issue of implied consent. In common usage, the word "consent" has several different definitions and conveys varying connotations, ranging from deliberate agreement to acquiescence. See Webster's New International Dictionary, Second and Third Editions; Random House Dictionary of the English Language (College Edition); Black's Law Dictionary, Fourth Edition. The strict definition of the word "consent" without any accompanying adjective seems to suggest an actual agreement. As used in the instruction given by the court, it may well have conveyed to some the thought that consent might be implied from the conduct of the parties and to others the idea that the consent of the secured party must have been in express terms. It would be sheer speculation for us to say that the jury's verdict was not based on the thought that express consent was required.

We recognize that the trial court is not required to charge the law upon a question in every possible manner in which a correct statement of it may be prepared by counsel, but the law must be so declared that the jury may not be in doubt as to the law of a particular question as applied to the facts of the case. *DeShazo v. State,* 120 Ark. 494, 179 S.W. 1012. The instructions must fully and fairly declare the law applicable to any defense as to which the defendant has offered sufficient evidence to raise a question of fact. *Cox v. State,* 116 Ark. 588, 173 S.W. 187. See also, *Barnhardt v. State,* 169 Ark. 567, 275 S.W. 909. Even if the court's instructions could be said to have covered the matter in a general way, it is reversible error to

refuse to give a specific instruction correctly and clearly applying the law to the facts of the case, unless it affirmatively appears that no prejudice resulted. *Beevers v. Miller,* 242 Ark. 541, 414 S. W. 2d 603; *Lighter* v. *State,* 157 Ark. 261, 247 S.W. 1065. Since the record clearly indicates that appellant's principal defense was that the sale to Powell was made with the consent of the Nashville Production Credit Association, we certainly cannot say that he was not prejudiced by the refusal of this instruction.

There was no error in the refusal of other instructions offered by appellant. His requested instruction No. 1 would have been essentially covered by the court's instruction No. 11 and appellant's requested instruction No. 2 except for its declaration that defendant should be acquitted if the PCA later acquiesced in the sale of the cattle. In this respect, it was an incorrect statement of the law. When the owner's consent is a defense in a criminal case, it must precede the act constituting the gist of the offense and does not relate to what occurs thereafter. *State* v. *Boggs,* 181 Iowa 358, 164 N.W. 759 (1917); *People* v. *Lowe,* 209 App. Div. 498, 205 N.Y.S. 77 (1924). Consent given after the offense is complete does not destroy the criminality of the act or prevent its prosecution as a public offense. *Davis* v. *Government of Canal Zone,* 299 F. 256 (5th Cir. 1924). See also, *People* v. *Anderson,* 7 Mich. App. 513, 152 N.W. 2d 40 (1967). This is not to say that the secured party's conduct subsequent to the sale could not be considered as evidence of prior consent, but the jury should not be told that consent could be given after the sale was made. *Waters* v. *Georgia,* 15 Ga. App. 342, 83 S.E. 200 (1914).

By appellant's requested instruction No. 3, the jury would have been told that notice to or knowledge of one or more members of the board of directors of the PCA, or of any of the PCA employees, would constitute knowledge of the PCA, a corporation. This is not a correct statement of the law. We have long applied the rule of agency law that a corporation, which can act

only through its officers and agents, is affected with notice which comes to an officer, agent or employee in the line of his duty and the scope of his powers and authority and that knowledge of an officer, agent or employee acquired in the ordinary discharge of his duties is ordinarily to be imputed to the corporation. See *American Exp. Field Warehousing Corp.* v. *First National Bank,* 233 Ark. 666, 346 S.W. 2d 518; *A. J. Chestnut Co.* v. *Hargrave,* 177 Ark. 683, 7 S.W. 2d 800; *Bank of Hoxie* v. *Meriwether,* 166 Ark. 39, 265 S.W. 642. But a corporation is not affected by notice to, or knowledge of, an officer, agent or employee unless the notice or knowledge comes to him while he is acting in the course of his employment and the matter comes within the scope of his authority. *Poole* v. *Newark Trust Co.,* 1 Terry 163, 40 Del. 163, 8 A.2d 10 (1939); *Wellington* v. *Maffi,* 136 Tex. 201, 150 S.W. 2d 60 (1941); *Corrigan* v. *Bobbs-Merrill Co.,* 228 N.Y. 58, 126 N.E. 260, 10 A. L. R. 662 (1920); 19 C.J.S. 615, et seq., Corporations, §§ 1079, 1081; 3 Fletcher, Cyclopedia Corporations, Perm. Ed., 129, § 793 (1965). See *Sims* v. *Southeast Missouri Trust Co.,* 140 Ark. 365, 215 S.W. 671. *Wilmans* v. *Peoples Building & Loan Assn.,* 193 Ark. 118, 97 S.W. 2d 930. Furthermore, by the great weight of authority, notice to one individual director, or knowledge acquired by him, while not acting officially as a member of the board in the business of the corporation is not chargeable to the corporation, unless communicated to the board of directors or to some officer entitled to receive it. *Poirier* v. *East Coast Realty Co.,* 84 N.H. 461, 152 A. 612 (1930); *Schoenbaum* v. *Firstbrook,* 405 F. 2d 200, 211-12 n.9, and cases therein cited (2nd Cir. 1968); *Skaggs* v. *Big Sandy Commercial Bank,* 246 Ky. 157, 54 S.W. 2d 650 (Ct. App. 1932); 3 Fletcher Cyclopedia Corporations, Perm. Ed., 68, § 808; 19 C.J.S. 616, Corporations, § 1079b. See also, *Hudson* v. *Alaska Airlines,* 43 Wash. 2d 71, 260 P.2d 321 (1953). In this respect, the court's instruction No. 11 stated the law more favorably to appellant than he was entitled to.

Since a remand is necessary, there are other points which we must consider, the most important of which is

Point III, dealing with venue. We agree with appellant that the undisputed evidence shows that all negotiations for the sale of the cattle between Hill and Powell took place in Sevier County, that both Hill and Powell were residents of Sevier County and that Powell delivered the check for payment of the purchase price in Sevier County. We also agree that the only connection between Howard County and the transaction was the fact that the cattle were on the Doc Simpson farm in that county.

It is presumed that an offense charged was committed within the jurisdiction of the court in which the charge is filed, unless the evidence affirmatively shows otherwise. Ark. Stat. Ann. § 43-1426 (Repl. 1964). The state relies upon Ark. Stat. Ann. § 43-1414 (Repl. 1964) which reads:

> Two counties, offenses committed in.—Where the offense is committed partly in one county and partly in another, or the acts or effects thereof, requisite to the consummation of the offense, occur in two [2] or more counties, the jurisdiction is in either county. [Crim. Code, § 18; C. & M. Dig., § 2875; Pope's Dig., § 3691.]

Consequently, it must be presumed that the venue was properly laid, unless the evidence affirmatively shows that no act essential to the offense and no effect of the offense occurred in Howard County. We find no such evidence. The cattle were in Howard County at all pertinent times.

Statutes like § 43-1414 are remedial, intended to prevent miscarriages of justice by extending the lines of jurisdiction beyond the limits prescribed by the common law, and are to be liberally construed. *State* v. *Ashe*, 182 Wash. 598, 48 P.2d 213 (1935); *Robinson* v. *Commonwealth*, 217 Ky. 129, 288 S.W. 1044 (1926); *People* v. *Vario*, 165 Misc. 842, 2 N.Y.S. 2d 611 (1938); *Willis* v. *O'Brien*, 151 W. Va. 628, 153 S.E. 2d 178 (1967), cert. denied, 389 U.S. 848, 88 S. Ct. 71, 19 L. Ed. 2d 116 (1969).

If the acts committed by the accused were intended to take effect in a county other than that in which all were actually committed, venue may be laid in the former county, even though all of the acts of the accused were done before the actual effect of the unlawful purpose has materialized there. *People* v. *Wallace*, 78 Cal. App. 2d 726, 178 P.2d 771 (1947); *People* v. *Vario*, supra. See also, *People* v. *Quill*, 2 Misc. 2d 72, 149 N.Y.S.2d 566 (1956), writ of prohibition on jurisdictional grounds denied, 3 App. Div. 2d 717, 159 N.Y.S.2d 312, motion for leave to appeal denied, 3 App. Div. 2d 764, 161 N.Y.S.2d 577, indictment dismissed on other grounds 11 Misc. 2d 512, 177 N.Y.S.2d 380 (1958).

The language of the Supreme Court of Washington in *State* v. *Ashe*, supra, is appropriate:

A crime may be a single act and immediate in all its consequences and the locality where it was committed is its "vicinage." On the other hand, a crime may be the result of a series of acts or the result of a single act. The direct consequences may be made to occur at various times and in different localities. The criminal act, the motive of the perpetrator, the cause, and the effect, are but parts of the complete transaction. Wherever any part is done, that becomes the locality of the crime as much as where it may have culminated. Commonwealth v. Jones, 118 Ky. 889, 82 S.W. 643, 4 Ann. Cas. 1192.

\* \* \* Identical, or similar, statutes have been passed in a number of states and in some of them have been in existence for many years. Under such statutes the vicinage of a crime begun in one county and finished in another, or where the cause occurs in one county and the result in another, has been deemed to be in either county. Commonwealth v. Jones, supra; Coleman v. State, 83 Miss. 290, 35 So. 937, 64 L.R.A. 807, 1 Ann. Cas. 406; People v. Crotty, 55 Hun, 611, 9 N.Y.S. 937; People v. Peckens, 153 N.Y. 576, 47 N.E. 883 (citing with approval the Crotty Case, supra, and others); Archer v. State,

106 Ind. 426, 7 N.E. 225; Robinson v. Commonwealth, 217 Ky. 129, 288 S.W. 1044; State v. Spayde, 110 Iowa, 726, 80 N.W. 1058; Reynolds v. State, 18 Ariz. 388, 161 P. 885, Ann. Cas. 1918D, 879.

Under virtually identical, or similar, statutes, we find the following applications:

A prosecution for committing a nuisance by pollution of a stream from the discharge of a sewer may be had in a county in which the waters have been rendered impure by the discharge, even though every act which produced this effect took place in an upstream county. *State* v. *Glucose Sugar Refining Co.*, 117 Iowa 524, 91 N.W. 794 (1902); *State* v. *Smith*, 82 Iowa 423, 48 N.W. 727 (1891); *Commonwealth* v. *Louisville & N. R. Co.*, 175 Ky. 267, 194 S.W. 345 (1917). See also, *State* v. *International Paper Co.*, 201 La. 870, 10 So. 2d 685 (1942);

An indictment for inducing another to commit perjury in the county in which the perjured testimony was to be given, even though the alleged incitement and attempt to procure the witness to commit perjury took place in another county, has been held proper. *People* v. *Vario*, supra;

A conviction for embezzlement may be had in the county in which the accused agent should have accounted to his principal for money entrusted to him for the use and benefit of the principal in another county, even though there was no evidence as to the place where the accused used or spent the money. *Draughon* v. *State*, 29 Ala. App. 385, 196 So. 290 (1940);

Venue in the county where a female was taken for purposes of prostitution has been held proper on a charge of taking a female person for prostitution by fraudulent inducement, even though all the representations and inducements on which the consent of

the female was given were made in another county. *People* v. *Mandell,* 35 Cal. App. 2d 368, 95 P.2d 704 (1939);

Even the payment of a check drawn by an officer of a corporation and used for the officer's personal purposes by a bank located in a county different from that where the check was drawn has been held to be sufficient basis to lay the venue for prosecution of the officer for embezzlement because the effect of the payment was to diminish the corporation's funds on deposit there, even though it be acknowledged that the corporation actually had title to no specific money in the bank. *State* v. *Johnson,* 109 Kan. 239, 199 P. 104 (1921);

Prosecution of a soliciting agent of an insurance company upon a charge of obtaining money by false pretenses could be had in the county where fictitious applications for insurance were received by the company, check for payment of a commission thereon drawn, and the amount of the check charged to the account of the insurance company, as against the contention that the money was actually received in the county from which the application was mailed and the check received and cashed. *State* v. *Gibson,* 132 Iowa 53, 106 N.W. 270 (1906);

Venue of a prosecution for violation of a statute prohibiting the making of statements and reports with the intent to deceive any person was sustained in the county where the alleged false report was received by the state bank commissioner, even though the statement and report were prepared, subscribed, sworn to and transmitted from another county. *State* v. *Mason,* 61 Kan. 102, 58 P. 978 (1899).

Perhaps the case most nearly analogous to the one before us involved a charge of receiving stolen goods. It was held that where the accused purchased the goods in one county and took possession of them in another,

the courts of either county would have jurisdiction (i.e., the right to exercise its jurisdiction based upon venue) over the offense. *Ellison* v. *Kentucky*, 190 Ky. 305, 227 S.W. 458 (1921).

In reaching this decision, we are not oblivious of the provisions of Article 2, Section 10, of our Constitution. This matter has been thoroughly, and we think correctly, treated by the Supreme Court of West Virginia in *Willis* v. *O'Brien*, 151 W.Va. 628, 153 S.E. 2d 178 (1967), cert. denied 389 U.S. 848, 88 S. Ct. 71 19 L. Ed. 2d 116 (1969), in which it was held that a charge of murder by reason of an abortion could be tried in the county in which the woman died even though the abortion was performed in another county. A statute providing that the offense or murder could be prosecuted either in the county where the mortal wound was inflicted or that where death ensued was there held constitutional. The West Virginia court reasoned that the legislature had not granted authority for prosecution in a county other than that in which the offense was committed, and held that where one puts in force an agency for the commission of a crime, he, in legal contemplation, accompanies the agent to the point where it becomes effectual.[1] This is closely akin to our reasoning in *State* v. *Reeves*, 246 Ark. 1187, 442 S.W. 2d 229, where we held that an aider, abettor or assister in the commission of larceny could be prosecuted in the county where the property was actually taken.

In this case, the acts of Hill with reference to the sale may well have taken place in Sevier County, but the intention essential to his conviction must have been to defeat the holder of the "lien" in the collection of the debt. If the cattle were in Howard County, the "lien" was there and its enforcement could be expected to be conducted or at least initiated in that county. The effect of the sale was to transfer title to the cattle located in Howard County to Powell, who would cer-

[1]Similar constitutional provisions have seemed to be no impediment to similar results in Alabama, Kansas and Washington. See also, *Commonwealth* v. *Jones*, 118 Ky. 889, 82 S.W. 643 (1904).

tainly take them into his possession there.[2] Clearly, acts or their effects requisite to the consummation of the alleged offense would occur in Howard County. The venue was not improperly laid there, even though it might have been properly laid in Sevier County.

Upholding the circuit judge's ruling on the venue question is harmonious with our decisions involving venue of prosecutions for receiving stolen property in any county in which the property is either received or possessed by the accused as provided by Ark. Stat. Ann. § 43-1420 (Repl. 1964). See *Atwood* v. *State,* 184 Ark. 469, 43 S.W. 2d 70; *Smith* v. *State,* 169 Ark. 913, 277 S.W. 530; *Baker* v. *State,* 58 Ark. 513, 25 S.W. 603. See also, *McCoy* v. *State,* 161 Ark. 658, 257 S.W. 386, wherein we held that proof of venue was sufficient when it showed only that one charged with forgery had uttered the forged instrument in the county where the indictment was found. Our holding is not contrary to *Norris* v. *State,* 170 Ark. 484, 280 S.W. 398, because we only held there that the court had jurisdiction of an alleged offense of obtaining a check under false pretenses when the venue was laid in the county from which the representations were mailed and in which the check was received, although the check was issued and paid elsewhere.

On a retrial, we anticipate that appellant's Point IV will likely arise. We find no error in the introduction of evidence as to the total amount of appellant's indebtedness to the PCA. His plea of not guilty put all material facts in issue. Ark. Stat. Ann. § 43-1223 (Repl. 1964). The existence of a debt secured by the security agreement and financing statement was an essential element of the offense charged. *McCaskill* v. *State,* 68 Ark. 490, 60 S.W. 234. As we understand the evidence, it shows that the financing statement and security agree-

---

[2]Appellant seems to take the position that Powell and Hill were partners in the ownership of the cattle. Powell's testimony does not support this premise. Powell said that Hill bought the cattle and was to buy, sell and furnish money and Powell was to do the work, and if there was a profit when the cattle were sold, it was to be split between them. Powell said that title was vested in Hill. See Ark. Stat. Ann. § 65-107(4) (b) (Repl. 1966).

ment, according to its own provisions, secured all existing and future indebtedness of Hill to the PCA. This evidence was relevant to a material issue in the case.

Appellant's Point VI may well arise on retrial. This matter arose out of the state's claim of surprise when Powell, a witness called by the state, testified that he borrowed money from the Nashville PCA to purchase the cattle from Hill and told Glen Coggins that the purpose of the loan was to purchase from Hill the cattle involved here. Coggins was Field Supervisor for the PCA, and the official of the company to whom Powell made application for the loan and who also filled out the financing statement and security agreement signed by Hill upon which the prosecution was based. The court ruled that the prosecuting attorney might cross-examine the witness about a prior contradictory statement on this point if he was surprised and if he had evidence that Powell had made such a statement. The prosecuting attorney proceeded to question the witness about a prior contradictory statement. At the time the witness left the stand, the prosecuting attorney asked permission to play a tape recording of a statement purportedly made by the witness, but the trial judge requested that the playing of the tape be postponed until the following day. We do not know whether that tape would have revealed a basis for this impeachment, because it does not appear that the matter was ever mentioned again. The state did show that Powell's loan papers, made from information furnished by him, revealed that the property was located on Powell's own farm, eight miles southeast of DeQueen, and no reference was made to any cattle on the Doc Simpson farm in Howard County. The questions about the prior statement were proper under the circumstances to lay a foundation for contradiction of the witness. Ark. Stat. Ann. § 28-706 (Repl. 1962); *Garrison v. State,* 148 Ark. 370, 230 S.W. 4.

Appellant's argument on Point II is based upon his contention that the facts and circumstances establish that the prosecution was an effort to collect the debt because: there was no evidence of criminal intent; Tom Hill

had been trusted by the PCA and had paid every previous loan made to him; even though Hill had left Arkansas after the sale of the cattle, he had thrice returned voluntarily in an effort to work out matters pertaining to the debt; the Nashville PCA knew about the sale of the cattle to Powell and had extended the maturity date on the Hill loan; Powell had made voluntary payments on the debt and had surrendered his PCA stock; the PCA knew of Hill's cattle operations in Mexico and Texas. Some of these matters, such as the PCA's knowledge of the sale, are disputed on the basis of conflicting evidence. The question of intent is to be determined from all the facts and circumstances of the case, and the existence of intent is ordinarily a jury question. *Lucas* v. *Commonwealth*, 255 S.W. 2d 609 (Ky. 1953); *State* v. *Wilfong*, 114 Kan. 689, 220 P. 250 (1923).

It would unduly extend this already lengthy opinion to outline the testimony in the case. It is sufficient to say that we find that the evidence was sufficient to present a jury question on appellant's intent. We find no evidence to indicate that the prosecution was instituted for the collection of the debt. The testimony by the PCA manager that he still felt an obligation to collect the debt and that he would still accept a mortgage or agreement signed by appellant falls far short of showing that criminal processes have been subverted in violation of appellant's constitutional rights.

We do not feel that there is any likelihood that the prosecuting attorney will in his opening statement again allude to the possibility that appellant will not take the stand or to sales of mortgaged property in other counties, so we find it unnecessary to consider these remarks covered in appellant's Point V. We find no error in the overruling of appellant's objection to the final statement in the state's closing argument. That statement was:

If by chance, and I don't think there is a chance, you should acquit this defendant—and you will never hear me criticize any one of you if you do—, but if you do, you can bet your bottom dollar that

every loaning institution and every store in Howard County, Arkansas, is in trouble from now on. Thank you.

The trial judge is accorded a wide latitude of discretion in controlling the extent, scope, range and propriety of arguments of counsel to the jury, the exercise of which will not be reversed in the absence of manifest gross abuse. *Peters* v. *State,* 248 Ark. 134, 450 S.W. 2d 276; *Parrott* v. *State,* 246 Ark. 672, 439 S.W. 2d 924; *Fisher* v. *State,* 241 Ark. 545, 408 S.W. 2d 894, cert. denied, 389 U.S. 821, 88 S. Ct. 43, 19 L. Ed. 2d 73; *Reynolds* v. *State,* 220 Ark. 188, 246 S.W. 2d 724; *Reynolds* v. *State,* 211 Ark. 383, 200 S.W. 2d 806. We are unable to say that there was any abuse of the court's discretion here. We have held that there was no abuse of discretion in allowing a fervid speech by a prosecuting attorney about the futility of maintaining courts and having courthouses if juries would not convict on such testimony as was offered in the case on trial. *Kelley* v. *State,* 175 Ark. 1170, 1 S.W. 2d 46. Refusal to exclude expressions of opinion of the prosecuting attorney as to the effect of failure to properly enforce the law has been held not erroneous. *Venable* v. *State,* 156 Ark. 564, 246 S.W. 860. A statement in a rape case that "The jurymen are the ones that enforce the law and if the people know the law is not enforced, the law is going to be violated" was not improper. *Davis* v. *State,* 150 Ark. 500, 234 S.W. 482. The statement, "Gentlemen, when you return a verdict of less than murder in the first degree in this case, you throw down the license to everybody in this county to commit the same crime," among other remarks, was found not to be outside the bounds of legitimate argument. *Smith* v. *State,* 79 Ark. 25, 94 S.W. 918.

Appellant's arguments relating to his Point I really go to the sufficiency of the evidence to show criminal intent, failure to show that the financing statement and security agreement were filed in Howard County, inconsistencies and contradictions in the testimony on behalf of the state, the alleged knowledge of officers of the PCA that Powell was borrowing money from the PCA to

532

purchase the cattle from Hill. We find no merit in any of these arguments. The matters of criminal intent and the corporation's knowledge have heretofore been mentioned in connection with other points. Resolution of contradictions and inconsistencies was for the jury. The PCA had a security interest in the cattle, as between it and Hill, regardless of whether the instruments were properly filed. Ark. Stat. Ann. §§ 85-9-201, 203, 204, 301 (Add. 1961).

For the error indicated, the judgment is reversed and the cause remanded for a new trial.

HARRIS, C.J., dissents.

CARLETON HARRIS, Chief Justice, dissenting. It appears to me that the court, by this opinion, is adding a requirement, not heretofore in existence, for the conviction of one accused of disposing of mortgaged property. Though, as stated by the majority, the statute itself mentions nothing about consent, I agree that if one consents that the property that has been mortgaged to him may be sold by the mortgagor, no crime has been committed. But I do not agree that such consent can be implied in this type of case, and I find no Arkansas decisions to that effect—and none are cited by the majority.

The majority say that though we have not specifically said that implied consent may be inferred from a course of conduct we have given the principle effect without stating it, and three Arkansas cases are cited in support of that statement. The first of these, *Kaplan* v. *Scherer*, 205 Ark. 554, 169 S.W. 2d 660, dealt with whether the chancery court had jurisdiction in the matter there at issue. We pointed out that the right to have a suit in equity transferred to circuit court is waived by voluntarily submitting to trial of all the issues in the chancery court; the opinion also makes reference to another case, *Hill* v. *McClintock*, 175 Ark. 1059, 1 S.W. 2d 566, where this court stated:

"McClintock did not ask or obtain a ruling upon his motion to dismiss the appeal, but, on the other hand, went to trial in the circuit court on the merits of the case. Under our system of pleading he will be deemed to have waived a ruling on his motion to dismiss the appeal and to have consented to the jurisdiction of the circuit court to try the case."

These cases deal entirely with court jurisdiction and I certainly cannot see where the holdings are relevant to a criminal charge of disposing of mortgaged property. The other two cases cited[1] are rape cases dealing with whether the alleged rape victim, by her actions, impliedly consented to intercourse. In *Threet* the alleged victim admitted that she had subsequently voluntarily met the alleged rapist at the same place where she was raped, had sexual intercourse with him, and "further admitted that she had had intercourse with a number of men. ***" Also, she admitted that she had been paid money for these acts of intercourse, and each instance was with her permission (except the alleged rape). Evidence also reflected that she made no disclosure of the alleged rape until it was discovered sixty days later that she was meeting men at the place of that occurrence. I certainly do not consider that case as any authority for the holding in the case at hand. In *Jackson* the defense likewise was that the prosecuting witness had consented to the act of intercourse and evidence was introduced that the prosecuting witness had gone to a neighbor's house with the alleged rapist, had sat there with him for some period of time, following the alleged rape, went to bed without making any complaint and subsequently met the defendant on two different occasions before bringing any charge. Jackson requested an instruction as follows:

"The court instructs the jury that, if they find from the evidence in this case that the defendant and the prosecutrix remained friendly for some time after the alleged outrage, this can be considered whether the sexual intercourse was by consent or not."

---

[1]*Threet* v. *State*, 110 Ark. 152, 161 S.W. 139; *Jackson* v. *State*, 92 Ark. 71, 122 S.W. 101.

We reversed because this instruction or one of a similar nature was not given. I cannot see where the holding in this case is in any way pertinent to the issue presently before us, for, of course, under the very nature of the charge of rape, the actions of the prosecutrix are fully as important as what she says, if not more so.

I regret that we are, by this opinion, presenting yet another defense to the charge of disposing of mortgaged property.

I respectfully dissent.